**In re A. Paul SCHWENKE.**

No. 920480.

Supreme Court of Utah.

Dec. 1, 1993.

Rehearing Denied Jan. 18, 1994.

---

A. Paul Schwenke, pro se.

Wendell K. Smith, Salt Lake City, for the Bar.

HALL, Chief Justice:

A. Paul Schwenke appeals an order of the Board of Bar Commissioners ("the Board") affirming a hearing panel's findings of fact, conclusions of law, and recommendation of discipline that included a recommendation that Schwenke be disbarred and pay restitution in the amount of $97,250. We affirm.

In 1985, Schwenke represented Caren Serr in a personal injury action. In 1987, Serr and her husband Ron Serr filed a complaint with the Office of Bar Counsel ("the Bar") alleging that Schwenke had violated the Rules of Professional Conduct by misappropriating approximately $100,000 in the course of settling Serr's personal injury case. The matter was then held in abeyance pending the outcome of civil litigation between the parties. On September 19, 1989, the parties entered into a stipulation in the third district court in which Schwenke agreed to a $100,-000 judgment against him based on fraud, not dischargeable in bankruptcy.

On December 4, 1990, a summons and formal complaint that incorporated by reference the September 1989 stipulation were issued. Schwenke's actual whereabouts were unknown to the Bar. The Bar investigated and determined that if the summons and formal complaint were mailed to Schwenke's address shown on the official roster of attorneys, it was unlikely that Schwenke would receive them. Consequently, the summons and formal complaint were served upon Schwenke by certified mail directed to the office where Schwenke was known to have been practicing law. Before the summons and formal complaint were mailed, however, Bar counsel Stephen A. Trost met with Jamis M. Johnson, an attorney who subleased office space to Schwenke at the time. Johnson assured Trost that all mail sent by the Bar to Johnson's office (the same address where Schwenke had been practicing) would be forwarded to Schwenke. Accordingly, the summons and formal complaint were mailed to this address.

It appears that sometime in the middle of January 1991, Schwenke left the state and

did not provide the Bar with his new address. While Schwenke's whereabouts were unknown to the Bar between the time the summons and formal complaint were served and the time he left in mid-January, Johnson claimed that Schwenke remained in contact with his office. On January 11, 1991, a notice of intent to default was sent by certified mail to the address where Schwenke had conducted his law practice. On March 5, 1991, a request for entry of default was submitted to the executive director of the Bar, and on March 19, 1991, default was entered against Schwenke.

On March 28, 1991, the Bar mailed a request for a sanctions hearing to the office where Schwenke had been practicing law. On May 24, 1991, notice of a sanctions hearing set for July 22, 1991, was mailed to the same address. On December 6, 1991, notice of the sanctions hearing reset for March 2, 1992, was sent by certified mail, this time to Schwenke's last known address as shown on the Bar roster. In addition, a copy of the notice of hearing was sent to a Las Vegas, Nevada, residence.

Between the time the notice of hearing was sent and the date of the hearing, Schwenke did not answer the complaint. On March 2, 1992, the sanctions hearing was held. Schwenke appeared at the hearing, admitting that he learned of the sanctions hearing on approximately February 6, 1992, and that he knew of the sanctions hearing from the notice that had been sent to the Las Vegas address. Even though default had been entered against Schwenke, the merits of the complaint were addressed. The Bar called witnesses and introduced documentary evidence establishing the facts and violations charged in the formal complaint. Schwenke cross-examined the witnesses and testified in his own behalf. At the conclusion of the hearing, the panel entered findings of fact,

conclusions of law, and a recommendation that Schwenke be disbarred. The panel further recommended that he make restitution to Serr in the amount of $97,250.[1]

On May 4, 1992, the Board approved by order the hearing panel's findings, conclusions, and recommendation of discipline. On May 19, 1992, Schwenke moved for reconsideration of the order. He contended that he was not properly served with the summons and formal complaint and that the only pleading he received was the notice of hearing resetting the sanctions hearing for March 2, 1992. He sought an order requiring "adequate and proper" service of the summons and formal complaint. He asserted that the hearing panel's findings, conclusions, and recommendation of discipline were racially motivated. The Board granted a hearing on Schwenke's motion for reconsideration.[2]

At the May 28, 1992, hearing on Schwenke's motion for reconsideration, Schwenke withdrew his contention that the hearing panel's action was racially motivated. After considering all the facts and circumstances, the Board concluded that the hearing panel had appropriately found that Schwenke was properly served with the summons and formal complaint. In addition, the Board concluded that Schwenke had been afforded a fair hearing on the merits of the complaint in that he appeared at the hearing, confronted the witnesses against him, examined the evidence, and presented matters in his own defense. Notwithstanding, the Board granted Schwenke's motion for reconsideration and afforded him the opportunity to file an answer, after which the hearing panel would reconvene and consider any additional matters presented by the parties. Accordingly, the Board ordered Schwenke to file an answer to the complaint. Instead of filing an answer, however, he filed an objection to the Board's order granting his motion

1. The hearing panel found that pursuant to the $100,000 stipulated judgment entered by third district court, Schwenke had paid $250 and conveyed a Duchesne County property valued at $2500 to Serr, leaving a balance of $97,250.

2. We note that on May 19, 1992, Schwenke had stated in an affidavit that his address on the official Bar roster was P.O. Box 57853, Murray, Utah 84107, the same address to which the notice resetting the sanctions hearing for March 2, 1992, was sent.

for reconsideration, arguing that despite the Board's findings, he had not been properly served and therefore could not be ordered to file an answer.

On July 7, 1992, the Bar caused Schwenke to be personally served with the summons and formal complaint. He again failed to file a responsive pleading, and on July 31, 1992, default was again entered against him. On August 5, 1992, nine days after the prescribed time had expired, Schwenke filed an answer to the July 7, 1992, summons and formal complaint. He contended that he thought he had hand-delivered a copy of the answer along with some other documents relating to another matter to the Bar on July 17, 1992. Later, he learned that instead of putting a copy of the answer in the envelope with the other documents, he had "inadvertently" placed it in his file. As a result, the answer was not filed within the time prescribed in the summons. He claims that when he learned of the mistake, he filed a late answer even though default had been entered against him.

On August 10, 1992, the Board considered and denied Schwenke's objection to their earlier order on the ground that the objection was rendered moot by personal service of the July 7, 1992, summons and formal complaint.[3] On August 10, 1992, the Bar filed a motion with the Board to affirm the hearing panel's findings, conclusions, and recommendation of discipline entered following the March 2, 1992, sanctions hearing. On August 11, 1992, Schwenke moved to set aside the default certificate pertaining to the default entered July 31, 1992. The Bar responded, opposing Schwenke's motion to set aside the default. After considering Schwenke's motion, the Board entered an order on September 3, 1992, affirming the hearing panel's findings of fact, conclusions of law, and recommenda-

tion of discipline, which included the recommendation that Schwenke be disbarred.

Schwenke appeals, arguing that the default entered against him for failing to answer the July 7, 1992, summons and formal complaint within the time prescribed in the summons and the resulting order affirming the hearing panel's findings of fact, conclusions of law, and recommendation of discipline should both be set aside. He asserts that his default was due to mistake, that it is fundamentally unfair and reversible error for the Board to ignore his motion to set aside the default certificate, and that it was unfair for the Board to enter a default certificate before ruling on his objection to the order granting his motion for reconsideration.

We begin by addressing a threshold matter. At the time of oral argument, Schwenke appeared pro se and objected to this court's use of the stipulation that he and Serr entered into in the third district court. Schwenke contended that the stipulation, by which he agreed to a $100,000 judgment against him based on fraud and nondischargeable in bankruptcy, was merely oral and was not part of the district court record. After examining the record, we conclude that Schwenke was less than candid with this court. The record in this proceeding contains two copies of the stipulation and order that were part of the record in the proceeding before the district court. A review of the transcript of the March 2, 1992, sanctions hearing reveals that two copies of the stipulation and order were placed in evidence at the hearing: one, a certified copy of the stipulation and order prepared by Serr's counsel after the parties had agreed to the terms of the stipulation, was subsequently signed by Judge John A. Rokich; the other, a copy of the same stipulation and order, bears Schwenke's signature and contains minor

---

3. The order was drafted before the entry of default on July 31, 1992. At the time, it was presumed that Schwenke would file an answer to the July 7, 1992, summons and formal complaint. As a result, the order provides that Schwenke's objections could be presented to the hearing panel when it met to reconsider his case. Because Schwenke never filed an answer to the July 7, 1992, summons and complaint, default was entered. Portions of the order which mention a later hearing were no longer applicable.

modifications.[4]

In short, it is clear that the stipulation was reduced to writing and became part of the record in the district court. Furthermore, it is clear that Schwenke was aware of this fact. Notwithstanding the minor changes in the stipulation made by Schwenke, he received a copy of the stipulation, approved it as is evidenced by his signature, and returned it by mail to Serr's attorney.

We now turn to the merits. While Schwenke raises several issues relating to the default entered against him for failure to answer the July 7, 1992, formal complaint within the time prescribed in the summons, we conclude that whether Schwenke was properly served with the December 4, 1990, summons and formal complaint is the dispositive issue.[5]

■ We begin our analysis by stating the applicable standard of review. This case presents a mixed question of law and fact. Whether a person has been served with process is a question of fact.[6] Whether a person is properly served, however, is a question of law.[7] We will sustain factual findings by the hearing panel so long as they are supported by substantial evidence.[8] We afford no deference to conclusions of law but review them for correctness.[9]

■ Rule XI(b) of the Procedures of Discipline of the Utah State Bar provides, "Service shall be made personally upon the attorney in question or by registered or certified mail to the last known address as shown by the official roster of attorneys of the Bar." At the time of service, Schwenke's whereabouts were unknown to the Bar, thereby precluding personal service. The Bar investigated and determined that if the summons and formal complaint were mailed to Schwenke's last known address as shown by the official roster of attorneys of the Bar, in strict compliance with the rule, it was unlikely that Schwenke would receive them. The Bar then served the summons and formal complaint on Schwenke by certified mail at the office of Jamis M. Johnson. This was the office where Schwenke had been practicing law and was his last known actual address. Prior to serving the summons and formal complaint, Bar counsel received assurance from Johnson that all mail sent by the Bar to Johnson's office would be forwarded to Schwenke.

On January 11, 1991, a notice of intent to default was sent by certified mail to Johnson's office under the same agreement that it would be forwarded to Schwenke. Evidence suggests that Schwenke remained in the state until mid-January 1991 and that up until that time he remained in contact with Johnson's office. Additional evidence indicates that Schwenke was aware of the action taken by the Bar in the present matter and that he requested that Johnson watch for correspondence from the Bar. Notwithstanding, Schwenke failed to respond to the summons and formal complaint. Thereafter, a request for entry of default was mailed and default was sent certified mail under the same arrangements with Johnson. Schwenke still failed to respond.

---

**4.** Apparently, after Schwenke received a copy of the stipulation and order prepared by Serr's counsel, he did not feel that the stipulation accurately represented the parties' oral agreement entered into in open court. As a result, he made a few minor modifications and signed the stipulation.

**5.** Schwenke contends that because he argued in his motion for reconsideration that he had not received the summons and complaint and because the Board subsequently granted his motion, the issue of whether he was properly served with the December 4, 1990, summons and complaint was adjudicated in his favor. Schwenke is mistaken. The Board concluded that the hearing panel had found that he was properly served.

Furthermore, it is clear that the Board granted Schwenke's motion solely to allow him an opportunity to file an answer and present the merits of his position.

**6.** *Reed v. Reed*, 806 P.2d 1182, 1184 n. 3 (Utah 1991) (citing *Carnes v. Carnes*, 668 P.2d 555, 557 (Utah 1983)).

**7.** *Id.*

**8.** *In re Discipline of Schwenke*, 849 P.2d 573, 576 (Utah 1993).

**9.** *Reed*, 806 P.2d at 1184–85.

We have observed that under the more stringent requirements of service of process under Utah Rule of Civil Procedure 4, it is not required that a plaintiff exhaust all possibilities as a means of finding and serving a defendant, only that the plaintiff exercise reasonable diligence in good faith.[10] The Bar has met this requirement.

 We have also previously determined that in disbarment proceedings, adherence to minimum due process requirements includes notice of a hearing.[11] On December 6, 1991, a notice of hearing set for March 2, 1992, was sent by certified mail to Schwenke's address as shown on the official roster of attorneys of the Bar and to the Las Vegas address. Schwenke appeared at the sanctions hearing and admitted that he received notice of the hearing on February 6, 1992, at the Las Vegas residence. Between the time Schwenke received the notice of hearing and the date of the hearing, he neither contacted the Bar nor filed an answer to the formal complaint. At the sanctions hearing, Schwenke cross-examined witnesses called by the Bar and testified in his defense as to the charges set forth in the formal complaint.

We accordingly conclude that Schwenke was properly served with the summons and formal complaint on December 4, 1990, and that all subsequent documents were also properly served, thereby affording adequate notice and opportunity to respond to the charges leveled against him. Although Schwenke was in fact in default, he was nevertheless afforded a full-scale hearing on the merits of the allegations against him.

We have duly considered Schwenke's other arguments and find them to be without merit.

The order of disbarment and the payment of restitution is affirmed.

HOWE, A.C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

---

**10.** *Downey State Bank v. Major–Blakeney Corp.*, 545 P.2d 507, 509 (Utah 1976).

**11.** *Schwenke*, 849 P.2d at 576.