CHARLES BERNARD MEAD, petitioner.

Suffolk.    February 9, 1977. — March 28, 1977.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*State Administrative Procedure Act.    Constitutional Law,* Due process of law, Right to hearing. *Board of Bar Examiners. Words,* "Agency."

The Board of Bar Examiners, as an arm of the judicial department, is not subject to the procedures set forth in G. L. c. 30, § 1. [255]

An applicant who failed the Massachusetts bar examination by only a fraction of a point under the grade score below the passing grade which would have entitled him to have his essay paper reread under the rules of the Board of Bar Examiners did not show any abuse of discretion on its part in giving equal weight to the Multistate Bar

Examination portion and the essay portion of the examination [255]; nor did the applicant show any lack of due process in the procedures testing his qualifications or in the absence of an adversary hearing with respect to the grading of his essay [256-257].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 8, 1976.

The case was heard by *Braucher, J.*

*Charles Bernard Mead,* pro se.

*Frederic S. O'Brien* for the Board of Bar Examiners.

HENNESSEY, C.J. The petitioner, Charles Bernard Mead (Mead), took the Massachusetts bar examination in February, 1976. He failed. His action in the Supreme Judicial Court for the county of Suffolk prayed that the Board of Bar Examiners (board) be ordered to reevaluate the essay portion of his examination. He also filed a motion that the board be ordered to produce various materials which would enable Mead to "prove statistically" that his low score on the essay portion was inconsistent with the "very high score" he obtained in the Multistate Bar Examination (MBE) portion of the February, 1976, examination.

A single justice of this court, after hearing, dismissed the action, and Mead appealed.[1] There was no error.

The single justice made no findings of fact. If we accept as evidence the assertions and representations contained in a number of documents proffered by Mead, the facts are as follows.

In February, 1976, the board administered its examination to 497 applicants. Of that number, 308 passed the examination. The first day of the examination was the MBE which consisted of 200 questions for each of which four answers were supplied. An applicant received credit if he selected the best of the four answers. The second day of the examination called for essay answers to ten hypothetical fact patterns.

The MBE was scored by machine. The essay examina-

---

[1] The board appeared before this court by its chairman, Mr. Frederic S. O'Brien. Mead appeared pro se.

tion was graded by readers selected by board members and by board members themselves. Each applicant's raw MBE score was combined with his essay score by the equi-percentile method. This is a recognized statistical procedure which gave equal weight to each section of the examination to obtain the final score. If an applicant's combined score was between forty-eight and fifty, one or more of the board members reread his essay examination.

Mead's combined score was 47.4 and his essay examination was not reread. The essay examinations of seventeen applicants whose combined scores were higher than Mead's, but still below forty-eight, were not reread.

A Massachusetts attorney who does specialized educational work related to bar examinations read Mead's essay examination paper, "marked [it] *hard*," and opined that the grade should have been high enough to bring Mead's average score, MBE and essay combined, well over the passing grade of fifty. A second Massachusetts attorney apparently reached a similar opinion.

Mead's discovery motion sought, inter alia, from the board, an adequate sampling of both passing and failing examination papers. We infer that the single justice impliedly denied this motion, in dismissing Mead's action.

Mead contends that the State Administrative Procedure Act, G. L. c. 30A, is applicable. However, by § 1 of that chapter, the board, as an arm of the judicial department, is excluded from the definition of "Agency" and is thus not subject to the procedures of c. 30A.

Mead also contends that the examining and grading process of the board is arbitrary and capricious. Before the single justice he offered only bald conclusory language in support of this claim. One of his principal contentions is that the board was somehow in error in giving equal weight to the MBE and essay portions. Again, Mead offers little more than his own conclusions. We do not believe that any evidence could be offered which would establish that the equal weighing by the board of the two methods of examination constituted an abuse of the broad discretion of the board.

Mead also argues correctly that he is entitled to due process of law in the testing of his qualifications. The issue is what procedures qualify as due process. There is no support for Mead's apparent proposition that he is entitled as of right to a rereading of his paper. It is true that Mead failed by only a fraction of a point to reach the grade score which would have entitled him to have his paper reread under the board's rules. However, it is also true that the board provided a rereading for any apparently failing applicant who scored within two full points below the passing grade. These are reasonable provisions in light of the fact that hundreds of candidates take the examinations at each offering, twice a year. Cf. *Pettit* v. *Gingerich*, 427 F. Supp. 282 (D. Md. 1977).

Nor is Mead entitled, in an attempt to show that his examination was wrongly graded, to the due process provided by an adversary hearing with the right to introduce evidence before an impartial fact finder. Mead cites no convincing authority for such a contention. Professor Davis, in stating that reexamination is a speedier and more accurate way to provide due process for applicants who fail, writes, "Bar examiners determine questions of fact — qualifications of applicants — by written examinations, but examiners' conclusions are almost never challenged." 1 K.C. Davis, Administrative Law § 7.09 (1958). Courts have consistently refused to regrade examinations, usually on the premise that the right of reexamination is a sufficient guaranty of fairness.[2] Massachusetts provides an unqualified right of reexamination.

Mead relies on *Marmer* v. *Board of Registration of Chiropractors*, 358 Mass. 13 (1970), as entitling him to a hearing. That case is not apposite here. Mead does not

[2] See, e.g., *Tyler* v. *Vickery*, 517 F.2d 1089 (5th Cir. 1975), cert. denied, 426 U.S. 940 (1976); *Whitfield* v. *Illinois Bd. of Law Examiners*, 504 F.2d 474 (7th Cir. 1974); *Feldman* v. *State Bd. of Law Examiners*, 438 F.2d 699 (8th Cir. 1971); *Chaney* v. *State Bar of Cal.*, 386 F.2d 962 (9th Cir. 1967), cert. denied, 390 U.S. 1011 (1968); *Staley* v. *State Bar of Cal.*, 17 Cal. 2d 119 (1941); *In re Chachas*, 78 Nev. 102 (1962); *In re Wayland*, 510 P.2d 1385 (Okla. 1971); *In re DeOrsey*, 112 R.I. 536 (1973); *In re Monaghan*, 126 Vt. 193 (1967).

allege, as did Marmer, that the examiners treated him differently from others. Indeed, Mead disclaims any assertion of partiality, prejudice or discrimination against him on the part of the board. Presumably the single justice relied on the absence of any such allegation in dismissing the action. Additionally, it seems clear that the single justice concluded that Mead was not entitled to proceed to an evidentiary hearing based on his limited contentions and supporting documents. We agree. We conclude also that Mead has failed to show any unfairness in the board's methods or rules which might impel us to grant relief to Mead under our supervisory power over the board in its direction of bar examinations.

*Judgment affirmed.*