In re Petition of John RANDOLPH–
SENG, Petitioner and Appellant.

No. 17487.

Supreme Court of Utah.

Aug. 4, 1983.

Robert L. Stolebarger, Salt Lake City, for
petitioner and appellant.

C. Jeffry Paoletti, Salt Lake City, for respondent.

HOWE, Justice:

Petitioner appeals from the determination by the Board of Commissioners of the Utah State Bar denying him admission to the practice of law in the State of Utah. He contends that the Bar Examiners' conduct in the administration of the examination was arbitrary and capricious, denying him due process and equal protection guaranteed under the Fourteenth Amendment of the United States Constitution, that the use of the Multiple-State Bar Examination (MBE) constituted an unauthorized delegation of authority by the Board and that it was manifestly unjust to deny him access to the practice of law when he fell short of automatic passage by less than one point.

Under Article VIII, § 1 of the Utah Constitution, this Court is vested with the inherent power to regulate all matters concerned with the practice of law. Both under that authority and by legislative enactment (U.C.A., 1953, as amended, § 78–51–10) the Board of Bar Commissioners is given the power to determine the qualifications and requirements for admission to practice law and to conduct examinations of applicants. All rules and regulations made by that Board are subject to the approval by this Court. Under the regulations existing at the time under review here[1] the Board used the MBE. The Board required applicants to achieve a score of 60.0 or higher on 12 out of 18 essay questions, and to achieve an overall score of 60.0 on the entire bar examination by averaging the essay examination with the MBE on the basis of two-thirds weight to the essay examination and one-third weight to the MBE. The MBE score equivalent to 60 points was calculated as follows: The lowest passing candidates, based on essay questions alone, were first determined for the five most recent examinations, including the current one. Their MBE scores were averaged, adjusted down to the next lowest whole number and converted to 60. The MBE score of each current candidate was then converted accordingly, added to twice the essay score and divided by three. The resulting score would have to be 60 in order to assure automatic passage.

■ Appellant sat for the July 1979 and February 1980 bar examinations and failed both times. He attacks the results of the February 1980 examination only. His inability to pass that examination, standing alone, does not entitle him to a review. Relief is granted only where he can prove arbitrary or capricious conduct on the part of the Bar Examiners or in the administration of the examination, or show that extraordinary circumstances of his case require his passage to prevent manifest injustice. Review of Bar Examination and Appeal, adopted by Bar Commission, January 7, 1977, approved by Supreme Court, January 26, 1977. Under either posture the burden of proof is on the petitioner. *In Re Thorne,* Utah, 635 P.2d 22 (1981); *Younger v. Colorado State Board of Bar Examiners,* 482 F.Supp. 1244 (D.Colo.1980); *Petition of Wayland,* Okl., 510 P.2d 1385 (1972).

■ Petitioner contends that he was denied equal protection and procedural due process guaranteed under the Fourteenth Amendment of the United States Constitution. Specifically, he avers that the examiners failed to score the answers to the essay questions based on predetermined allocation of points to components of model answers. Under the review procedure set up by the Board, the Review Board entertained petitioner's grievance petition. The record indicates that he also received a percentage breakdown of how many examinees passed and failed the various essay questions. The record is silent, however, on whether he requested copies of the essay questions and his answers, together with model answers. Recommendation IV of the Ad Hoc Bar Examination Commission, approved, as amended, by Supreme Court on January 26, 1977 provides that model answers *must* accompany proposed essay questions. We are unable to ascertain what requests, if any, petitioner made. In the absence of proof to the contrary, we pre-

---

1. Revised Rules Of The Utah State Bar For Admission To The Bar, approved as amended January 26, 1977, and further revised and approved on May 9, 1983.

sume that the Review Board gave petitioner ample opportunity to make a full inquiry and that he was accorded procedural due process as requested. Cf. *Application of Peterson,* Alaska, 459 P.2d 703 (1969), where extensive correspondence between the petitioner and the Bar Commissioners was submitted as evidence that questions, answers and model answers had been requested but withheld from the petitioner.

More troublesome is the question of whether the subsequent admission to the practice of law of some applicants who at the outset failed the February 1980 bar examination discriminated against this petitioner or whether the selection was rationally and fairly based upon objective criteria. We are not here concerned with the occasional exception to the rule that admits an unsuccessful candidate under extraordinary circumstances in order to prevent manifest injustice, but with flaws or weaknesses inherent in the administration of the bar examination. In reviewing that contention we are mindful that the State cannot exclude a person from practice in contravention of due process or equal protection of the Fourteenth Amendment. *In Re Bogart,* 386 F.Supp. 126 (New York 1974). *Schware v. Board of Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). In *Schware,* the U.S. Supreme Court stated that:

> [a] state can require high standards of qualification such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law.

*Id.,* 353 U.S. at 239, 77 S.Ct. at 756, 1 L.Ed.2d at 801. Where no suspect class or fundamental right was involved, the Schware court required a rational relationship between a petitioner's nonadmission and the state's legitimate objectives. That same standard has been followed by state courts. See *State Bar v. Early,* 144 W.Va. 504, 109 S.E.2d 420 (1959) comparing the right to practice law to a franchise with inherent powers in the Supreme Court to supervise, regulate and control that practice.

Inherent as those powers may be, they are not absolute. One of the limitations placed upon us is the duty to assure that a rational procedure was followed in subsequently admitting some, but not others, of those applicants who originally failed the February 1980 Bar. Neither the Board nor the petitioner has provided us with any information how the selection was achieved. The record indicates that Question 22 was failed by 54% of all applicants. It is our understanding from presentations made at oral argument that that question was eliminated and the passage rate adjusted to 11 out of 17. Applying the 12 out of 18 standard, petitioner's essay portion averaged 59.67, with 11 questions passed. Adjusting to the 11 out of 17 standard, his score on the essay portion rose to 60.23. Petitioner's MBE score was 108, converted to an equivalent of 58.0. Under the higher standard his combined total reached 59.11 points; under the lower standard it would rise to 59.48, or .52 below the automatic passage cutoff. Petitioner claims that others in identical or similar situations were later admitted and that he should be accorded the same rights. His counsel, in a letter to this Court, indicates that two or three examinees with overall weighted averages below sixty points were admitted under the discretionary powers of the Utah State Bar. The Bar answers that:

> [t]he simple coincidence that certain other applicants who failed the February, 1980 [sic] were subsequently admitted does not establish grounds for a finding that Appellant was in some manner the victim of discrimination. Each appeal to the Grievance Committee is reviewed individually and rises or falls on its own merits.

Unless supported by objective criteria, the procedure thus outlined by the Bar constitutes an over-simplification of applicable standards, and could, standing alone, border on the arbitrary. Certainly the individual review, absent extraordinary circumstances alluded to above, must meet standards fair to all, and the opportunity to retake the examination is not the applicable remedy. *Richardson v. McFadden,* 540 F.2d 744 (4th Cir.1976). Stare decisis demands uniform

yardsticks. Where scores showed that applicants with lower points than appellants were passed but appellants were not, the Bar Examiners acted arbitrarily and capriciously in violation of both the due process and equal protection clauses of the Fourteenth Amendment. *Richardson,* supra, at 751. Where an applicant was admitted despite a low MBE score, the court admitted all those who under the same formula scored higher than the admitted applicant. *Petition of Claerhout,* 95 Nev. 86, 590 P.2d 620 (1979). This Court has previously applied that same standard and admitted student applicants "who received an overall passing score equal to or above the combined score of the student applicant that received the lowest passing score." *In Re Guyon, et al.,* Utah, Appeal Nos. 14920 through 14923 and 14949 (1977) (decision unreported).

■ In light of that rule and of the fact that neither side has shown the absence or presence of such a standard, we find it necessary to remand the case for the limited purpose of instructing the Board to make available to petitioner a list of those applicants who failed at the outset but were subsequently admitted to practice after the February 1980 bar examination. The list should contain a breakdown of their combined scores and those of petitioner based upon identical criteria. If the cut-off point was revised to below sixty, an objective explanation is in order how that point was reached. Should the comparison disclose that petitioner's overall score was as high as or higher than that of the lowest scoring applicant admitted, due process and equal protection demand that he, too, be admitted. If, on the other hand, his weighted score falls below the lowest passing score, it will have been conclusively shown that the procedure was fair in all respects and that his petition should be denied.

With the possibility in mind that petitioner will not be able to show that the Board unfairly denied him admission as alleged above, we briefly touch upon his remaining arguments that the use of the MBE examination was an improper delegation of authority on the part of the Board, that it was manifestly unjust to deny him access to the practice of law when he failed by less than one point, or that in the alternative he should be admitted on the strength of his credentials in other fields.

■ This Court has approved the Board's decision to participate, like other jurisdictions, in the MBE. We have read the memorandum petitioner has submitted to support his attack on the validity of the MBE. As a fundament for such an attack it might well serve any failing applicant. But where is the evidence that ties into this controversy to give us something ripe for adjudication? Petitioner alleges that Educational Testing Service (ETS), the agency administering the MBE, does not disclose test questions, model answers and gridsheets with examinee answers. Did he request them for this petition? Did ETS refuse to comply? A record containing two pieces of correspondence, not an attempted Brandeis brief, would have sufficed to raise due process considerations and a discussion of the merits of ETS's alleged policy of nondisclosure. Without such evidence we are unable to address the issue by dint of mere conjecture.

■ In response to petitioner's request to be admitted on alternate grounds, we note that bar examinations have been universally upheld as proper tests of fitness and qualification for the practice of law. *Application of Peterson,* supra; *In Re Thorne,* supra; *Chaney v. State Bar of California,* 386 F.2d 962 (9th Cir.1967), cert. den., 390 U.S. 1011, 88 S.Ct. 1262, 20 L.Ed.2d 162, reh. den., 391 U.S. 929, 88 S.Ct. 1803, 20 L.Ed.2d 670; *Petition of Pacheco,* 85 N.M. 600, 514 P.2d 1297 (1973). *Schware,* supra. Nor is it manifestly unjust, within the fair guidelines set out above, to enforce a cutoff point below which passage is denied. *In Re Fischer,* Del., 425 A.2d 601 (1981); *In Re Thorne,* supra; *In Re Mead,* 372 Mass. 253, 361 N.E.2d 403 (1977) (denying re-reading of essays below certain point).

Under our inherent power to supervise, regulate and review the practice of law, we have independently weighed the evidence submitted by petitioner at his grievance hearing. See also *Siegel v. Committee of Bar Examiners,* 10 Cal.3d 156, 110 Cal.Rptr.

15, 514 P.2d 967 (1973) (dealing with moral fitness). We have been apprised of petitioner's educational background and professional responsibilities in other fields, and we in no way intend to belittle his achievements. However, we still hold to the principle first stated in *In Re Thorne,* supra, that "commendable as they are, they do not meet the requirements as to knowledge of the law, which is the purpose of the Bar Examination. It is also to be kept in mind that it is important that the standards of the profession be upheld, and that the interests of the public be protected." *Id.* at 24.

The case is remanded for final disposition consistent with this opinion.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.