2002 UT 71

**In re Kathleen G. ARNOVICK, Valerie L. Cox, and Henry B. Wansker, Petitioners.**

No. 20010136.

Supreme Court of Utah.

July 26, 2002.

Carolyn Montgomery, Salt Lake City, for petitioners.

Katherine A. Fox, Joni Dickson Seko, Salt Lake City, for respondent Utah State Bar.

## INTRODUCTION

HOWE, Justice:

¶ 1 Petitioners Kathleen G. Arnovick, Valerie L. Cox, and Henry B. Wansker appeal from the findings of fact and final determination of the executive committee of the Utah State Bar denying them admittance to the Bar.

## BACKGROUND

¶ 2 Arnovick and Cox as "student applicants" and Wansker as an "attorney applicant" took the July 2000 Utah Bar Examination. All three failed to pass.[1] The

1. Arnovick subsequently took the February 2001 examination, passed it, and was admitted to the

examination, as constructed, did not differ from other recent examinations; it contained 200 Multi-state Bar Examination multiple choice questions and 12 essay questions given over a two-day period. Wansker was required to answer only the essay questions. During the grading process, an essay question dealing with tort law was determined to be defective and was not graded. Consequently, each student applicant's final score combined the points they garnered on the Multi-state with the points they earned answering the remaining 11 essay questions.

¶ 3 Upon learning of their failure, Arnovick, Cox, and Wansker separately petitioned the Executive Committee of the Utah State Bar, contending that substantial irregularities in the construction, administration, and grading of the examination process resulted in manifest unfairness and denied them due process and equal protection under the Fourteenth Amendment of the United States Constitution. The Admissions Committee Panel of the Bar considered the petitions and recommended to the Executive Committee that they be denied. Thereafter, petitioners filed responses to the Admission Committee Panel's findings with the Executive Committee. Following an oral hearing, the Executive Committee prepared findings of fact and final determination for each petitioner, denying him or her relief. Sometime during the review process, petitioners learned that the examinations of five other applicants who had originally failed the examination were regraded, and those applicants were given passing grades.

¶ 4 Petitioners appeal.

## ANALYSIS

### I.

■ ¶ 5 Under article VIII, section 4 of the Utah Constitution, this court is empowered to govern the practice of law in Utah, including the admission to practice. *In re Petition of John Randolph–Seng*, 669 P.2d 400, 401 (Utah 1983). The Board of Bar Commissioners assists us in fulfilling this Bar.

responsibility, acting as an arm of the court in determining the qualifications and requirements for admission to practice law and in conducting examinations of applicants. *Id.; see also In re Admission of D. Eugene Thorne to the Utah State Bar*, 635 P.2d 22, 23 (Utah 1981). Because the Board of Bar Commissioners acts as our agent, our review of its decisions is not on the same footing as the review of a judgment of a trial court or an administrative agency. We may exercise judgment independent of the Bar Commission whenever we deem it appropriate. *In re Thorne*, 635 P.2d at 23. We have generally chosen, however, to "indulg[e] some deference to its findings and judgments," and have stated that "the Court should not disturb what the Commission has done unless the petitioner clearly demonstrates that he has been treated in an unfair, unreasonable or arbitrary manner." *Id.* Consequently, we review the actions of the Bar and the Bar examination process to determine if they clearly demonstrate that the petitioners have been treated in an unfair, unreasonable, or arbitrary manner.

■ ¶ 6 Petitioners contend that the Bar has treated them in an unfair and arbitrary manner and urge us to either admit them to the Bar or require all July 2000 Bar applicants to retake the examination. In support of their position, petitioners point to a number of alleged irregularities in the construction, administration, and grading of the examination that they contend contributed to their unfair or arbitrary treatment: (1) the Bar's failure to draft a proper torts question; (2) the Bar's decision not to grade the answers to the improperly drafted torts question; (3) the Bar's assignment to the applicants of identifiable examination numbers; (4) the Bar's utilization of graders who lacked professional expertise; (5) the Bar's use of an insufficient calibration process; (6) the Bar's failure to allocate to the graders a sufficient amount of time to grade the essays; (7) the Bar's use of curving techniques in determining scores; (8) the Bar's overweighting of the remaining 11 essay questions; (9) the Bar's refusal to grant petitioners' discovery request; (10) the Bar's deci-

sion to regrade the examinations of, and subsequently admit, five failing applicants whose scores fell within one point of a passing score.

¶ 7 We have carefully reviewed each of these allegations and find that petitioners have failed to establish that they have been treated in an unfair or arbitrary manner. Petitioners have provided us with an unreviewed and unsubstantiated statistical analysis of the examination, noting that in some instances the Bar did not comply with its operating procedures. They have also speculated that various parts of the examination process might have resulted in arbitrary or unfair treatment.

¶ 8 The irregularities pointed out by petitioners, however, do not convince us that the Bar treated them in an unfair manner. *See Application of Bettine,* 840 P.2d 994, 997 (Alaska 1992) (stating that even though criticisms of grading procedure were convincing from pure mathematical standpoint, they still did not show abuse of discretion). Petitioners do not and cannot demonstrate that the Bar singled them out for unfair treatment. Indeed, it appears that petitioners experienced very little, if anything, not experienced by the other examinees. Every applicant's torts essay was eliminated from the final score; each applicant's examination was subject to the same grading, calibrating, and scoring process; each applicant was able to earn the same amount of total points on the essays, and each applicant's total points earned were scaled to the MBE scores using the same formula; the same review provisions were available to all examinees takers; the Bar regraded the examination of all failing applicants whose scores fell within one point of a passing grade.

¶ 9 Moreover, petitioners fail to demonstrate that they have been treated in an arbitrary manner. To the contrary, the Bar's conduct in relation to the examination appears measured, disciplined, and reasonable given the circumstances. For example, petitioners assert that they may have been injured by the Bar's decision not to grade the torts essay question and by the Bar's grading procedures in general. Before deciding not to grade the torts essay, however, the Bar consulted the grading committee and the Director of Testing for the National Conference of Bar Examiners, evidencing that the Bar's decision was a deliberate and reasoned attempt to preserve the validity of the examination. Before grading the remaining essays, graders engaged in a calibration process designed to ensure uniformity in the grading process. The record contains no evidence that the graders ignored the calibration techniques, randomly assigned scores, or inaccurately reported those scores. The record also fails to support the assertion that the Bar graders "curved" the examination; the document upon which petitioners base this assertion was completed after the grading was finished and was not used to determine examination scores. Nor does the record show that the scaling of the scores from the 11 essays to the scores from the MBE examination was arbitrary—even if we assume that the scaling resulted in each of the essay questions being worth more than five points, a contention which petitioners have not established.

¶ 10 Petitioners have also enjoyed the benefit of an extensive grievance procedure, including (1) the filing of their complaint, (2) the review of their complaint by the Admissions Committee, together with its findings of fact and recommendations, (3) the petitioners' written response to those findings and recommendations, (4) an oral hearing, and (5) a review and formal findings by the Executive Committee of the Bar. The record indicates that during this process the Bar applied the proper standard for evaluating petitioners' claims, namely, that "relief shall be granted only upon a showing that the petitioner failed the examination because of a substantial irregularity in the administration of the examination, which resulted in the manifest unfairness or because of mathematical inaccuracy in the scoring process." Utah State Bar, *Bar Examination Review and Appeal Procedure* (1991).

¶ 11 Furthermore, during the review process, pursuant to Bar Admission Rule 11, approved by this court, the Bar made available to petitioners (1) the essay questions, (2) the applicants' answers, and (3) sample answers for each question. Additionally, the

Bar made available an outline of Bar examination passing rate data, a copy of the Bar Examination Grievance Appeal Procedure, an article on equating the MBE and essay scores, copies of the ethics question grading sheets, answers and score summaries, a copy of the *Bar Examiner Grading Handbook,* and a copy of a letter explaining how examinations are scored. Consequently, "we are not persuaded that [petitioners] have been dealt with in such [an arbitrary] or unfair manner that we should interfere with" the ruling of the Executive Committee of the Bar. *In re Thorne,* 635 P.2d at 24.

¶ 12 Obviously, as the arm of this court, the Bar must do its utmost to adhere to the rules, policies, and procedures that we have approved for their governance. When deviations from these rules, policies, and procedures occur, it is expected that the Bar will take whatever steps are necessary to insure that such deviations do not occur again in future examinations. However, lapse from strict compliance with the rules and procedures, while certainly a cause for concern on our part, does not automatically mean that the Bar has acted in an arbitrary or unfair manner.

## II.

¶ 13 Closely intertwined—indeed, often overlapping—with petitioners' allegations that the Bar treated them in an unfair and arbitrary manner are their allegations that the Bar has denied them equal protection and due process under the Fourteenth Amendment of the United States Constitution. Obviously, "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Schware v. Bd. of Bar Exam'rs,* 353 U.S. 232, 238, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). Nevertheless, individuals rarely succeed in arguing that their constitutional rights have been violated by Bar examination procedures. *See* Thomas J. Goger, *Validity Under Federal Constitution of State Bar Examination Procedures,* 30 A.L.R. Fed. 934 (1976). The petitioners in this case are no exception.

## A. EQUAL PROTECTION

¶ 14 Under the Equal Protection Clause of the Fourteenth Amendment and in the absence of a fundamental right or a protected class, states may treat similarly situated people differently if a reasonable basis exists for doing so. *State v. Herrera,* 1999 UT 64, ¶ 25, 993 P.2d 854. Petitioners argue that the Bar denied them equal protection when it subsequently regraded the examinations of and awarded passing scores to five other applicants who had originally failed but did not regrade petitioners' examinations. In so doing, the Bar followed the procedure outlined in the Utah Bar Examiner's Committee Grading Handbook, which provides that the Bar shall regrade the essay questions of only those failing applicants whose scores fall within one point of the required minimum passing score. Due to the heavy administrative burdens involved in regrading, this policy is completely reasonable, and consequently the Bar did not violate petitioners' right to equal protection. This practice of the Bar to regrade when an applicant comes within one point of passing is a salutary one and recognizes that grading the answer to an essay question cannot be done with exact mathematical precision. This practice should be encouraged since it works in favor of the applicants. *Accord Tyler v. Vickery,* 517 F.2d 1089, 1103 (5th Cir.1975), *cert. denied,* 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976) (stating "[i]t is curious logic to condemn the examiners for utilizing practices designed to recognize the inherent limitations of testing and for attempting to give the benefit of the doubt to applicants who may have been adversely affected by those limitations").

## B. SUBSTANTIVE DUE PROCESS

¶ 15 The Due Process Clause of the Fourteenth Amendment allows states to substantively regulate economic rights if such regulation bears a rational relation to a constitutionally permissible objective. *See Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963) (Harlan, J., concurring); *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563

(1955). Accordingly, a state may "require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar" without violating the Due Process Clause, as long as "any qualification [has] a rational connection with the applicant's fitness or capacity to practice law." *See Schware v. Bd. of Bar Exam'rs,* 353 U.S. at 238, 77 S.Ct. 752; *In re Randolph–Seng,* 669 P.2d at 402. Petitioners argue that the Bar denied them substantive due process through its lack of appropriate appeal procedures and denial of discovery requests. We find nothing, however, to indicate that the Bar procedures, as currently constituted, do not bear a rational relationship with the legitimate objective of regulating the admission to the Bar in this state and hold therefore that petitioners' right to substantive due process has not been denied.

## C. PROCEDURAL DUE PROCESS

■ ¶ 16 The Due Process Clause also "imposes constraints on governmental decisions which deprive individuals of liberty or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Determining the due process required in a given situation demands that we weigh:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. 893; *see also V–1 Oil Co. v. Dep't of Envtl. Quality,* 939 P.2d 1192, 1196 (Utah 1997). Relying on these factors, petitioners argue that they have been denied due process because their interest in passing the examination is great, the Bar could easily provide greater procedural protection to petitioners, and the Bar

has no legitimate interest other than providing due process to those who take the examination. Our weighing of these factors, however, leads to a different conclusion. In considering the first factor, we observe that the Bar's decision does not permanently deny petitioners the ability to practice law in Utah; they may retake the examination until they pass it. *See Lucero v. Ogden,* 718 F.2d 355, 359 (10th Cir.1983), *cert. denied,* 465 U.S. 1035, 104 S.Ct. 1308, 79 L.Ed.2d 706 (1984) (due process satisfied where applicant had unqualified right to retake examination). Turning to the second factor, we observe, as noted above, that petitioners have received the benefit of an extensive review process culminating in their appearance before this court. Given the extensive nature of this review process, the risk of error in the Bar's decision seems to us to be small and the probable value of additional procedural safeguards would be minimal. *See Giannini v. Real,* 911 F.2d 354 (9th Cir.1990), *cert. denied,* 498 U.S. 1012, 111 S.Ct. 580, 112 L.Ed.2d 585 (1990) (allowing applicant to see examination and petition state supreme court for review of denial of admission satisfied due process). Finally, in considering the third factor, we note that the fiscal and administrative costs of imposing any additional procedures on the Bar outweigh the benefit that such procedures could provide, especially given the ever-increasing number of Bar applicants. With these factors clearly in mind, we therefore hold that petitioners in this case enjoyed adequate procedural due process.

## CONCLUSION

¶ 17 We are not unaware that a typical Bar applicant sacrifices a great deal of time and energy in preparation for the examination, nor are we unsympathetic to the significant—even painful—personal and professional repercussions that may accompany a failure to pass the examination. Nevertheless, amorphous assertions regarding the unfair nature of the examination, unaccompanied by supporting evidence, do not establish a violation of constitutional rights or unfair or arbitrary treatment. We therefore affirm the findings of fact and final determinations of the Executive Committee of the Utah State

Bar denying petitioners admission to the Bar.

¶ 18 Chief Justice DURHAM, Associate Chief Justice, DURRANT, Justice RUSSON, and Justice WILKINS concur in Justice HOWE'S opinion.