2004 UT 17

**In re A. Paul SCHWENKE.**

**No. 20011025.**

Supreme Court of Utah.

Feb. 24, 2004.

Kate A. Toomey, Salt Lake City, for the Office of Professional Conduct.

A. Paul Schwenke, pro se.

DURRANT, Associate Chief Justice:

¶ 1 Petitioner A. Paul Schwenke was disbarred in 1993 for professional misconduct. Schwenke appeals the district court's denial of his petition for readmission to the Utah State Bar ("Bar"), arguing that the district court and the Bar misapplied the Rules of Lawyer Discipline and Disability and the Rules Governing Admission to the Bar in considering his petition. We affirm.

## BACKGROUND

¶ 2 In 1993, Schwenke was disbarred for the misappropriation of funds in connection with his representation of a client. He was ordered to pay restitution in the amount of $97,250 as part of the disbarment order. *See In re Schwenke*, 865 P.2d 1350 (Utah 1993). On April 3, 2001, Schwenke submitted an application for readmission to the Bar with the required fees. By a letter dated May 29, 2001, the Bar informed Schwenke that the Character and Fitness Committee ("Committee") had denied his application to sit for the July 2001 bar examination based on various factors, including his prior theft of client funds, various pending civil actions and unsatisfied judgments against him, and multiple arrests for driving while intoxicated. Schwenke requested a formal hearing, which was held on June 26, 2001. The Committee again recommended that Schwenke's application be denied based on the factors just enumerated. The Committee issued its

Findings of Fact, Conclusions of Law and Recommendation ("Recommendation") on August 10, 2001. This process was in accordance with the Rules Governing Admission to the Bar ("RGA"). *See* RGA 6–1, 6–3.[1]

¶ 3 At the June hearing, Schwenke objected to the hearing process, claiming that his reinstatement was governed by rule 25 of the Rules of Lawyer Discipline and Disability ("RLDD"), which gives the district court, not the Bar, jurisdiction over the reinstatement process. *See* RLDD 25. Consequently, pursuant to rule 25, Schwenke delivered a Verified Petition for Reinstatement ("Petition") to the Utah Law and Justice Center on June 29, 2001. The Petition, intended for the Office of Professional Conduct ("OPC"), was given to the receptionist at the Law and Justice Center. The receptionist stated in her affidavit that the process server told her the papers were for "admissions." Accordingly, she forwarded the Petition to the Deputy General Counsel in Charge of Admissions. Upon discovering the Petition among the delivered papers, the Deputy General Counsel forwarded a copy to the OPC. The Petition finally arrived at the OPC on July 2, 2001.

¶ 4 Schwenke also filed the Petition with the Fourth District Court[2] on July 3, 2001, along with a Petition for Extraordinary Writ asking the court to compel the Bar to allow him to sit for the July 2001 bar examination. The court denied Schwenke's request, stating that Schwenke must apply as a student applicant and receive the endorsement of the Character and Fitness Committee and, in the event of an unfavorable recommendation, encouraged Schwenke to appeal through the administrative process outlined in rule 14 of the RGA. Schwenke then filed an Emergency Petition to a Single Justice for an Extraordinary Writ in this court, which was also dismissed with an instruction to "proceed in the district court pursuant to the dictates of rule 25 of the Rules of Lawyer Discipline and Disability."

---

1. All references to the RGA refer to the version of the rules in effect at the time of Schwenke's request for readmission. The RGA have subsequently been revised and renumbered. The investigative and hearing process has been modified and is now set forth at RGA 8.

2. Venue was subsequently changed to the Third District Court.

¶ 5 The OPC filed its Memorandum in Opposition to the Verified Petition ("Opposition") on August 30, 2001, and the district court set the matter for a hearing on October 24, 2001. Schwenke moved to strike the Opposition on the ground that it was untimely, having been filed more than sixty days from the time Schwenke delivered his Petition to the Law and Justice Center. He also moved to strike the Recommendation of the Committee on the ground that the Committee hearing was improperly conducted under rules 14 and 6–1 of the RGA, rather than rule 25 of the RLDD. These motions were denied.

¶ 6 Schwenke declined to present any evidence at the district court hearing, and the district court denied his petition for readmission. Schwenke now appeals. He asks this court to strike the OPC's Opposition as untimely and to require the district court to review his Petition without a hearing because the district court hearing was scheduled out of time. He also requests that the Recommendation of the Character and Fitness Committee be thrown out because, he contends, the Committee applied the wrong standard in evaluating his fitness to practice law. Finally, he asks that the examination requirements under rule 25 be abated because he believes that the Bar wrongfully precluded him from taking the July 2001 student bar examination and the Multi–State Professional Responsibility Examination ("MPRE").

¶ 7 We have jurisdiction pursuant to article VIII, section 4 of the Utah Constitution and section 78–2–2(3) of the Utah Code.

**STANDARD OF REVIEW**

¶ 8 Under article VIII, section 4 of the Utah Constitution, this court possesses the rulemaking authority to "govern the practice of law, including admission to practice law." *In re Discipline of Sonnenreich,* 2004 UT 3, ¶ 12, 86 P.3d 712. Thus, "we review the district court's interpretation of our rules for correctness." *Id.* To the extent

that Schwenke's appeal represents an appeal from the Board of Bar Commissioners' application of the Rules Governing Admission, this court "may exercise judgment independent of the Bar Commission whenever we deem it appropriate." *In re Arnovick,* 2002 UT 71, ¶ 5, 52 P.3d 1246 (citation omitted).

**ANALYSIS**

**I. RULES GOVERNING THE PROCESS FOR AN ATTORNEY SEEKING READMISSION TO THE UTAH STATE BAR**

¶ 9 Schwenke argues that he should not have been subjected to the procedures and standards contained in the RGA because rule 25 of the RLDD governs the readmission process for an attorney who has been previously disbarred. Schwenke asserts that the RGA and the RLDD are mutually exclusive and that the Bar mistakenly applied the requirements contained in the RGA to his application for readmission. Consequently, Schwenke contends that he was wrongfully precluded from taking the bar examination and MPRE, and also that the Recommendation of the Character and Fitness Committee was unreliable. Schwenke therefore asks this court to abate the examination requirements and disregard the Committee's Recommendation for purposes of his readmission to the Bar.

¶ 10 The RGA are promulgated by the Utah State Bar and specify the requirements, procedures, and standards to be applied to a person seeking admission to the Bar. Under these rules, all applicants, including those seeking readmission after disbarment, must meet certain basic requirements. *See* RGA 14–2 ("An applicant for readmission to the Bar after disbarment shall satisfy all requirements of [r]ule 3 [specifying general requirements for all student and attorney applicants] ... and shall satisfy all other requirements imposed by the Supreme Court."[3]). Under rule 3, all applicants are required to take the student bar examination and MPRE, RGA 3–1, prior to which each

3. This rule has subsequently been renumbered and revised, and now provides that "[a]n Applicant for readmission to the Bar under these circumstances shall satisfy all requirements of

these Rules ... and shall satisfy all other requirements imposed by [r]ule 25 of the [RLDD], the OPC, and Utah courts." RGA 17–2.

applicant must undergo an investigation by the Bar's Character and Fitness Committee, RGA 6. The standard applied by the Committee mandates as follows:

An attorney's conduct should conform to the requirements of the law, both in professional service to clients and in the attorney's business and personal affairs. An attorney should be one whose record of conduct justifies the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them. An applicant whose record manifests a significant deficiency in honesty, trustworthiness, diligence, or reliability shall be denied admission.

RGA 6–1.[4]

¶ 11 The RLDD were adopted by this court effective July 1, 1993. RLDD, compiler's notes. Rule 25 provides that an attorney who has been disbarred may be readmitted "only upon order of the district court." RLDD 25(a). In order to be readmitted, the respondent attorney must file a verified petition with the district court specifying how he has met each of the criteria spelled out in subsection (e) of the rule or, if not, indicating "why there is otherwise good and sufficient reason for ... readmission." RLDD 25(b). This verified petition must also be served on OPC counsel. RLDD 25(c).

¶ 12 Subsection (e) of the rule specifies the criteria that must be met by the respondent, or abated by the district court, in order for the respondent to be readmitted. The respondent must show, among other things, that "[n]otwithstanding the conduct for which the respondent was disciplined, the respondent has the requisite honesty and integrity to practice law." RLDD 25(e)(4). Further, "[i]n readmission cases, the respondent must appear before the Bar's Character and Fitness Committee and cooperate in its investigation." *Id.* A copy of the Committee's recommendation is then forwarded to the district court with the petition. *Id.* In addition, under subsection (e), an attorney

who has been previously disbarred is required to pass the student bar examination and the MPRE. RLDD 25(e)(7).

¶ 13 Given the process delineated in rule 25, Schwenke argues that the Bar wrongly subjected him to the procedures and standards contained in the RGA. Schwenke contends that the standard adhered to by the Character and Fitness Committee under rule 6–1 of the RGA is broader than that required under rule 25 of the RLDD because it allows the Committee to "revisit[ ] the conduct that resulted in the prior disbarment," whereas rule 25 evaluates the attorney's honesty and integrity "notwithstanding" the prior conduct.[5] Thus, Schwenke maintains, the standard announced in RGA 6–1 was inapplicable to him and resulted in his receiving an unfavorable recommendation from the Committee and in his being denied the opportunity to take the bar examination and the MPRE. Schwenke asserts that the misapplication of these rules is "good and sufficient reason" to abate the examination requirements under rule 25 and to disregard the Committee's Recommendation. In so arguing, Schwenke misapprehends the readmission process and the rules governing it.

¶ 14 Under the Utah Constitution, this court has the authority to govern the practice of law. Utah Const. art. VIII, § 4. The Bar acts as our agent in carrying out this responsibility, and various bodies of rules have been promulgated by the Bar and this court to regulate the practice of law by attorneys. Although the Bar, on its own authority, has no power to make final decisions regarding the discipline or admission of attorneys, we have delegated to the Bar the responsibility of assisting the court in "investigat[ing] the moral fitness of applicants to practice law." *Barnard v. Utah State Bar,* 804 P.2d 526, 529 (Utah 1991). The Bar is given the obligation to recommend to the court "appropriate action in all cases involving admissions and public discipline." *Id.* To aid in this process and to ensure high stan-

---

4. This rule has been renumbered and revised, and is now located at RGA 8–1.

5. Indeed, rule 6–4 of the RGA specifies that the Committee may consider "past or pending disciplinary action ... of any jurisdiction" when determining whether an applicant possesses the requisite character and fitness.

dards of professional conduct among lawyers, this court has adopted the RLDD. In addition, pursuant to its delegated authority, the Bar has promulgated the RGA. The OPC notes that while the RGA and the RLDD generally operate in their separate spheres, there are situations in which they overlap. The OPC maintains that this case necessarily concerns both bodies of rules and that both were appropriately applied by the Bar and the district court in this case. We agree.

¶ 15 Over half a century ago, we stated that in instances of disbarment, "[t]he severance of the status [as a member of the Bar] as well as the right to exercise the privilege of that status places the party in the same position as if he had never been admitted to practice." *In re Oliver*, 97 Utah 1, 12, 89 P.2d 229, 234 (1939). Thus, "[w]hen he seeks readmission to the [B]ar he must comply with the rules upon admission, and any others, that his disbarment order or previous conduct may contemplate." *Id.* (citation omitted). Therefore, once disbarred, an attorney must comply with the RGA just as any other first-time applicant. The only difference is that in order for a disbarred attorney to be readmitted, in addition to following the usual admissions process, he must also comply with rule 25 of the RLDD and any other conditions stemming from his prior disbarment. Thus, rule 25 of the RLDD does not replace, but rather supplements, the admissions procedures specified in the RGA, and vice versa.

¶ 16 Nothing in rule 25 indicates that the procedures for taking the bar examination are any different for a previously disbarred attorney than for a new student or attorney applicant. The fact that rule 25 requires the potential readmittee to take and pass the student bar examination contemplates that the Character and Fitness Committee will apply its own standards, announced in the RGA, in determining whether to allow the applicant to sit for the exam. Contrary to Schwenke's assertion, the standard applied by the Committee in evaluating an applicant does not change just because that applicant is an attorney who has previously been disbarred.

¶ 17 Moreover, the standards governing an applicant's fitness to practice law announced in rule 25 of the RLDD and in rule 6–1 of the RGA are not necessarily inconsistent. Rule 6–1 authorizes the Committee to consider a wide variety of factors, including prior disciplinary actions, in determining whether an attorney manifests the necessary "honesty, trustworthiness, diligence, [and] reliability." RGA 6–1. Rule 25 asks whether an attorney "has the requisite honesty and integrity to practice law," "[n]otwithstanding the conduct for which the [attorney] was disciplined." RLDD 25(e)(4). Contrary to Schwenke's interpretation, the term "notwithstanding" does not preclude the district court from considering the attorney's prior conduct. The term suggests only that such prior conduct will not necessarily be determinative in the district court's ultimate decision. Even if these two standards differed in the way that Schwenke contends, Schwenke's conduct, as reported in the Committee's Recommendation, would certainly be sufficient to deny him readmission under either standard.

¶ 18 Therefore, the Bar properly complied with the standards and procedures required under the RGA, and it was appropriate for the district court to consider the Committee's Recommendation as provided in rule 25 of the RLDD. The district court's denial of Schwenke's Petition was proper inasmuch as Schwenke did not comply with the conditions of rule 25, including the requirement to take and pass the MPRE and student bar examination.

## II. PROCEDURAL REQUIREMENTS UNDER RULE 25 OF THE RULES OF LAWYER DISCIPLINE AND DISABILITY

¶ 19 Schwenke also argues that the district court did not properly comply with the procedural time limits mandated by rule 25 of the RLDD. He states that the OPC's Opposition to his Petition was not timely filed under the rule because it was submitted more than sixty days after he delivered his Petition to the Law and Justice Center, and further that the district court hearing was scheduled out of time because it took place more than ninety days after his Petition was filed.

Schwenke maintains that, due to these unacceptable delays, the district court should have rejected the OPC's Opposition and reviewed his Petition without a hearing. We disagree.

### A. Sixty–Day Time Limit for the OPC to File an Objection to a Petition for Readmission

¶ 20 Rule 25 requires that "[t]he respondent shall serve a copy of the petition upon the OPC counsel" and that "[w]ithin sixty (60) days after receiving a respondent's petition for ... readmission, OPC counsel shall either: (1) ... stipulate to the respondent's ... readmission; or (2) file a written objection to the petition." RLDD 25(c), (f). If the OPC files an objection, the district court must then schedule a hearing on the matter, but if not, the "district court shall review the petition without a hearing and enter its find-·ings and order." RLDD 25(g).

¶ 21 On June 29, 2001, Schwenke delivered his Petition to the Law and Justice Center, which houses the Utah State Bar and its admissions department, the OPC, and other Bar committees, in addition to other tenants, including the Judicial Conduct Commission, the Utah Trial Lawyers' Association, and Attorney's Title Guaranty Fund, Inc. The process server handed the Petition, along with a number of other papers, to the common-area receptionist and indicated that the papers were for "admissions." The Petition was accordingly forwarded to Joni Seko, Deputy General Counsel in Charge of Admissions. Ms. Seko, after noticing the Petition among the delivered papers, sent a copy to the OPC, which arrived in the OPC office on July 2, 2001. The OPC filed its Opposition to the Petition on August 30, 2001; this was within sixty days of actually receiving the Petition, but approximately sixty-two days after the document was delivered to the receptionist at the Law and Justice Center.

¶ 22 Schwenke argues that service on the receptionist at the Law and Justice Center on June 29, 2001, was effective as to the OPC. He contends that requiring a litigant to actually serve a specific department of the Bar would create an "unjustified burden" and would allow the Bar to "literally avoid ser-

vice" by "simply asserting that the process was served upon the wrong department." Schwenke therefore asserts that the district court should not have accepted the OPC's Opposition but should have reviewed his Petition without a hearing as suggested under rule 25. The OPC counters that rule 25(c) requires a litigant to actually "serve" OPC counsel and that, under the Utah Rules of Civil Procedure, service upon a common-area receptionist is not effective. In addition, the OPC points out that at least one OPC counsel is usually present to accept service and that appointments to accept service can be made easily.

¶ 23 The RLDD announce that "[e]xcept as otherwise provided in these rules, the Utah Rules of Civil Procedure ... apply in formal discipline actions and disability actions." RLDD 17(a). Also, "Service of any ... papers or notices required by these rules [in addition to the initial formal complaint against the respondent] shall be made in accordance with the Utah Rules of Civil Procedure." RLDD 14(b). Rule 4(d)(1)(E) of the Utah Rules of Civil Procedure provides that service "[u]pon [a] corporation ... or upon an unincorporated association ... [shall be made] by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or other agent authorized by appointment or by law to receive service of process."

¶ 24 Cases from other jurisdictions, discussing state and federal corollaries to the Utah rule, have reached varying conclusions concerning whether service on a receptionist is effective for a corporation or unincorporated association. Generally, "[p]roper service is not effected by serving the corporation's receptionist." 62B Am.Jur.2d *Process* § 269 (1990). *See also O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 354 (6th Cir.2003) (finding insufficient service of process where unknown receptionist signed for overnight package); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 486 (3d Cir.1993) (holding receptionist at common entrance of office building was not a "person in charge" for purposes of the state service of process rule); *In re Hunt's Pier Assocs.*, 156 B.R. 464, 471–72 (Bankr.E.D.Pa.1993) (find-

ing service on secretary at defendant's business not sufficient under the federal and state service requirements where no other means of service were attempted); *Kovalesky v. A.M.C. Associated Merch. Corp.*, 551 F.Supp. 544, 546 (S.D.N.Y.1982) (holding service not effective where process server merely tossed papers in front of receptionist who was not authorized to accept service).

¶ 25 There are, however, exceptions to this general rule. Courts have often found service to be effective where the employee who received service had a significant amount of authority or apparent authority within the organization; where the employee played an integrated role within the organization such that he or she would know what to do with papers; or where there were other assurances that the documents would reach the intended recipient. *See Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688–89 (9th Cir.1988) (finding service on receptionist effective where corporation was comparatively small and the role played by receptionist was proportionally large, and receptionist was the only one in the office when the process server arrived, indicating that she possessed more than minimal responsibility); *Koninklijke Luchtvaart Maat–Schappij N.V. v. Curtiss–Wright Corp.*, 17 F.R.D. 49, 51 (S.D.N.Y.1955) (holding face-to-face encounter with corporate officer not required to effect service where the officer's receptionist accepted service, promised to deliver the papers to the proper person, and did in fact deliver the papers). In general, "[t]he rules are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice," and the court will look at various factors to ensure that the service is fair in light of all the surrounding circumstances. *Direct Mail*, 840 F.2d at 688.

¶ 26 In this case, Schwenke's Petition was given to the common-area receptionist at the Law and Justice Center with a number of other documents and an instruction that the papers were for "admissions." According to the receptionist's affidavit, she is not supervised or employed by the OPC, nor is she authorized to accept service on behalf of the OPC or any other tenant in the building.

Although she notifies the OPC of any hand-delivered items, she does not deliver documents to the OPC. Moreover, the process server received no assurances that the Petition would be delivered to the OPC. Indeed, the receptionist was not even told that the Petition was intended for the OPC. While the process server may have believed that the delivered documents would make their way into the various offices of the Bar, he had no assurance that they would necessarily arrive at the OPC in a timely manner.

¶ 27 In cases arising under the Utah rule, proper service of process is generally necessary to give a defendant notice that he or she is being sued and to invoke the jurisdiction of the court. *See Meyers v. Interwest Corp.*, 632 P.2d 879, 880 (Utah 1981) ("It is axiomatic that a court acquires power to adjudicate by proper service of process which imparts notice that the defendant is being sued.... In that manner a court acquires jurisdiction to enter a judgment against a party."). Although the same jurisdictional issues are not at stake here, it is important that the OPC receives timely notice of an attorney's intent to seek readmittance to the Bar. This is especially true in light of the time-sensitive duties required of the OPC that are triggered by the service of the petition. Upon receiving a petition, the OPC must publish notice in the Utah Bar Journal and allow time for individuals to file their oppositions or concurrences with the district court. RLDD 25(d). Consequently, it would be difficult for the OPC to fulfill its obligations if the sixty-day time limit were to begin running before the petition actually reached the OPC.

¶ 28 Under the circumstances of this case, service of the Petition on the common-area receptionist at the Law and Justice Center did not constitute effective service of process, and such service was not sufficient to begin the sixty-day time limit for the OPC to file its objection imposed by rule 25. While the OPC's filing of its Opposition to the Petition may have waived the necessity for actual service, the Opposition itself cannot be considered untimely. Therefore, it was proper for the district court to consider the OPC's Opposition along with Schwenke's Petition

and to schedule a hearing in accordance with rule 25.

### B. Ninety–Day Time Limit for the District Court to Schedule a Hearing

¶ 29 Schwenke further argues that the district court hearing was inappropriate because it was scheduled too far out of time. Rule 25 requires that "[i]f an objection is filed by OPC counsel, the district court shall, within ninety (90) days of the filing of the petition, conduct a hearing." RLDD 25(g). Schwenke filed his Petition on July 3, 2001. The district court scheduled and held a hearing on October 24, 2001, twenty-three days beyond the ninety-day time limit specified by the rule. Schwenke argues that, because the hearing was scheduled outside of the ninety-day time limit, there should have been no hearing at all, and the district court should have reviewed his Petition without a formal hearing. We disagree.

¶ 30 Rule 25 clearly requires the district court to schedule a hearing where, as here, the OPC timely files an objection to the petition for readmission. The question, then, is what remedy should be afforded the potential readmittee when the district court fails to hold the hearing within the specified ninety-day time period. We think that the appropriate remedy in such instances is not, as Schwenke suggests, to have no hearing at all, but rather for the district court to schedule a hearing as soon as possible. We emphasize that the ninety-day time limit required under the rule is not without meaning. The district court is expected to do its utmost to meet these deadlines in a timely fashion. However, a district court's failure, for whatever reason, to comply with this rule does not supersede the court's obligation to ensure that unqualified individuals are not admitted to the Bar. Therefore, in cases involving admission to practice, a required hearing, though out of time, should nevertheless be scheduled as soon as the court's calendar will allow.

¶ 31 This is precisely what occurred in this case. The matter was transferred to the Third District Court on August 28, 2001. Neither party requested a hearing, nor made any effort to move the matter along on the district court's calendar. Consequently, the district court, on its own motion, set a time for a scheduling conference to "get the matter moving," and subsequently scheduled the hearing for October 24, 2001, just over three weeks after the ninety days had expired.

¶ 32 Thus, it was proper for the district court to hold a hearing on the matter and to consider the OPC's Opposition in addition to Schwenke's Petition in evaluating whether Schwenke should be readmitted to the Bar. Because Schwenke elected not to present any additional evidence at the hearing, the district court was necessarily left with only these documents and the Recommendation of the Character and Fitness Committee on which to make its determination. The district court complied with the procedural requirements of rule 25 and, based on the evidence before it, properly denied Schwenke's Petition.

### III. CONSTITUTIONAL ARGUMENTS

¶ 33 Finally, Schwenke makes various constitutional arguments, citing equal protection and due process violations and arguing that the judiciary's regulation of the practice of law violates the separation of powers doctrine because the Utah Supreme Court employs legislative, executive, and judicial powers in governing the legal profession in Utah. By his own admission, Schwenke failed to raise these constitutional arguments below.

¶ 34 It is well-established that we generally will not address issues raised for the first time on appeal. *See State v. Lopez*, 886 P.2d 1105, 1113 (Utah 1994) ("The general rule is that issues not raised at trial cannot be argued for the first time on appeal, and this rule applies to constitutional questions.").[6] In the context of attor-

---

**6.** Schwenke argues, nonetheless, that we should review his constitutional claims because they fall under the "liberty interest exception" to this general rule. Schwenke contends that he has

been denied the important "liberty interest" of pursuing his chosen profession. However, as we have expressed before, there is no "liberty interest exception," and we will address issues raised

ney discipline and admission cases, while we allow ourselves greater flexibility in addressing arguments on appeal that were not raised before the lower tribunal, we are not constrained to address such, and decline to address Schwenke's equal protection and due process claims.

¶ 35 With regard to the separation of powers issue, however, we take this opportunity to emphasize that the Utah Constitution is clear in its pronouncement that this court controls the practice of law. Under article VIII, section 4 of the Utah Constitution, we have the exclusive constitutional mandate to do so. As we stated over half a century ago,

> [T]he Legislature [cannot] limit the courts in their rights to determine the moral qualifications of their officers or prevent them from refusing to admit morally incompetent persons to practice, [or] compel them to retain such upon the roll.... The courts, and not juries or legislators, must ultimately determine the qualifications and fitness of their officers.

*Ruckenbrod v. Mullins,* 102 Utah 548, 559, 133 P.2d 325, 330 (1943) (quoting *In re Platz,* 42 Utah 439, 132 P. 390, 392 (1913)). This is true because, while other licensed professionals "may sell their time and skill to the public by virtue of their license from the state," only an attorney has the "right to set the judicial machinery in motion in behalf of another and to thus participate as an officer of the court in a judicial proceeding.... To properly function it is necessary that courts retain control of their officers." *Ruckenbrod,* 102 Utah at 558–59, 133 P.2d at 330.

¶ 36 Far from contradicting the separation of powers doctrine, this authority given to the court is entirely consistent with it. As expressed by a Florida federal district court, "[T]he doctrine of separation of powers mandates that in order for the system of checks and balances to be effective, each co-equal branch of government—executive, legislative, and judicial—must remain indepen-

dent." *Ippolito v. Florida,* 824 F.Supp. 1562, 1570 (M.D.Fla.1993). Thus, "[i]mplicit in the separation of powers doctrine ... is the notion that a truly independent and separate judiciary must be able to prescribe rules and govern the conduct of members and nonmembers who practice law." *Id.*

## CONCLUSION

¶ 37 The procedures and standards specified in the RGA and the RLDD are not inconsistent, and both bodies of rules necessarily apply to a previously disbarred attorney seeking readmission to the Bar. In this case, the Bar properly complied with the RGA in evaluating Schwenke's fitness to sit for the bar examination and to practice law. The district court likewise properly complied with rule 25 of the RLDD in considering the Committee's Recommendation, refusing to abate any of the requirements for readmission, and ultimately denying Schwenke's petition for readmission. The court also abided by the procedural requirements of the rule by accepting the OPC's Opposition as timely and scheduling a hearing on the matter. Schwenke does not raise any viable constitutional arguments on appeal.

¶ 38 Therefore, the order of the district court denying Schwenke's petition for readmission is affirmed.

¶ 39 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.

---

for the first time on appeal only when a party can demonstrate plain error or exceptional circumstances. *See Lopez,* 886 P.2d at 1113 (quoting *State v. Archambeau,* 820 P.2d 920, 923–25 (Utah Ct.App.1991)). "The fact that a 'liberty interest' is at stake is merely one factor articulat-

ed by the court to be considered when determining whether 'exceptional circumstances' exist." *Archambeau,* 820 P.2d at 925. Moreover, the right to practice one's chosen profession has never been considered to be a "liberty interest" for purposes of this analysis.