In the Matter of the DISCIPLINE OF A. Paul SCHWENKE, DOB: 10–12–51 ADM: 05–09–83.

Nos. 900136, 910095.

Supreme Court of Utah.

March 12, 1993.

Wendell K. Smith, Ralph Adams, Salt Lake City, for Utah State Bar.

A. Paul Schwenke, pro se.

HOWE, Associate Chief Justice:

In this disciplinary matter, we are asked to approve the petition of the Utah State Bar to disbar attorney A. Paul Schwenke from the practice of law in Utah. The Bar's petition is grounded in findings and recommendations of a special master appointed by the Bar. For the reasons stated below, we deny the petition.

Because these proceedings were protracted over several years and involved unrelated disciplinary matters that were consolidated for the purpose of the recommendation for disbarment, a rather lengthy introduction is in order.

## CASE NO. F-241

Schwenke has been the subject of two separate disciplinary matters before the Bar. In case No. F-241, Gentle Shepherd Child Placement Services, Inc., employed Schwenke to place Samoan children. He was to secure immigration visas and adoption documents that complied with relevant national and state laws. Furthermore, he was to bring those children to the United States from Samoa. In return, Schwenke would receive $5,000 for the placement of each child. He undertook the placement of five children, but completed only three of the adoptions. Although the first adoption went smoothly, the second two took almost eighteen months due to difficulties that arose during the court proceedings.

Schwenke received payment for the placement of two more adoptions, neither of which he completed. Some of the problems Schwenke encountered in those two cases were traceable to typical bureaucratic complications involved in international adoptions, as well as to changes in immigration rules for processing and securing travel visas. However, for several months he failed to communicate with Gentle Shepherd regarding these difficulties. Gentle Shepherd eventually completed the two adoptions through the efforts of a social worker. Ronald Rundberg, an owner of Gentle Shepherd, then filed a complaint with the Bar stating that an additional $1,200 had been expended above the amount paid to Schwenke to complete the

adoption work. The complaint sought reimbursement of that sum.

In 1988, on the Bar's recommendation, we placed Schwenke on a one-year supervised probation for neglect in failing to complete the adoptions. We also ordered him repay the $1,200 before the conclusion of the probationary period and, if restitution was not made by that time, to show cause why he should not be suspended from the practice of law for thirty days, with reinstatement conditioned on restitution. However, Schwenke did not make restitution of the $1,200 before the end of the one-year probationary period.

In 1990, the Bar issued an order to show cause why further sanctions should not be imposed on Schwenke for his failure to comply with the terms of the 1988 order of discipline. The original order to show cause, advising Schwenke of a February 5 hearing, was dated January 26, 1990, and was sent to a post office box. Apparently, copies were also given to the constable, whose return shows that the order to show cause was served on February 8. The February 5 hearing was never held. Another order to show cause, this one dated February 6, 1990, set a hearing for February 21, 1990. On both returns, the constable correctly shows Schwenke's place of business as 165 South West Temple, Salt Lake City, Utah, but then shows service on A. Paul Schwenke at 221 East 300 South. Schwenke asserts that this was the restaurant where his namesake son worked, and it is possible that the order to show cause was served on him. In any event, Schwenke did not appear at the order to show cause hearing.

Consequently, on the Bar's recommendation, we suspended Schwenke from the practice of law for thirty days and required him to pay $1,200 to bar counsel "to be held for Mr. Ronald Rundberg" and to pay the Bar's costs. We conditioned reinstatement on restitution. A copy of the order was sent to Schwenke by certified mail and was received by a receptionist at his business address.

## CASE NO. F–281

In case No. F–281, the Bar filed a complaint against Schwenke for unprofessional conduct involving fraud and misrepresentation. Schwenke was charged with initiating bankruptcy proceedings on behalf of a client to prevent foreclosure on property that Schwenke had purchased from the client. Schwenke filed an answer to the complaint but then failed to respond to the Bar's discovery requests. As a result of his failure to comply, the Bar asked this court to strike the answer and impose sanctions. At that time, we ordered that Schwenke be suspended from the practice of law for one year and conditioned reinstatement on his completing fifteen hours of legal education, including five hours of legal ethics. He was also ordered to reimburse the Bar for its costs. Schwenke objected to the striking of the answer on the ground that he had responded but the Bar lost the pleadings. Schwenke was present at the order-to-show-cause hearing. In January of 1991, two months before the order was entered against him, Schwenke left Utah for Samoa. The order was not mailed to him at his Salt Lake address until March of that year. Schwenke did not return to Utah until April of 1992.

## CONSOLIDATED ORDER TO SHOW CAUSE

The order-to-show-cause proceedings that bring the instant matter before us took place in the summer of 1992. In F–241, we asked Schwenke to show cause why further sanctions should not be imposed for his continued practice of law during the thirty-day suspension and for his failure to make restitution and pay costs as ordered. In F–281, we asked Schwenke to show cause why further sanctions should not be imposed for his failure to comply with rule XVIII(a) of the Procedures of Discipline of the Utah State Bar following the one-year suspension beginning in 1991. Schwenke appeared at the order-to-show-cause hearing to present his defenses. The special master thereafter recommended that Schwenke be disbarred.

## STANDARD OF REVIEW

■ We begin our analysis with the applicable standard of review. We treat factual findings by the special master much the same as findings of administrative agencies and sustain them so long as they are supported by substantial evidence. Recommendations for discipline are not binding on this court, which alone has the power to disbar attorneys. Procedures of Discipline R. VII(a). We reject unreasonable recommendations; we accept and approve reasonable recommendations. *See In re Calder*, 795 P.2d 656, 657 (Utah 1990).

In this case, the findings of the special master pose some problems in that they confuse the dates of the disciplinary proceedings, discuss rules of discipline applicable to some violations in the context of the wrong proceeding, and in general, afford too little attention to the chronology of Schwenke's problems. We acknowledge that the parties appear to have been of little help to the master in sorting things out. The result, however, is that the findings lack the evidentiary support needed to be sustained. We are therefore compelled to resort to the record in each proceeding.

## ANALYSIS

Our decision to deny the Bar's recommendation of disbarment is driven by two primary considerations, one procedural and the other substantive. We address each in turn.

We begin with the Procedures of Discipline of the Utah State Bar. Proceedings on formal committee complaints are governed by rule XI; the disciplinary hearing before the board is governed by rule XII. In F–241, Schwenke opposed the 1990 contempt charge on the basis that there was no personal service of the order-to-show-cause notice and the suspension order. The special master responded that under rule XI(b) and (h), personal service is not required: "Service shall be made personally upon the attorney in question or by registered or certified mail to the last known address as shown by the official roster of attorneys of the Bar." Rule

XI(b). Even under these lenient requirements, however, the Bar's service was deficient. The order-to-show-cause notice in F–241 was mailed to a post office box, not to Schwenke's last known business address. The discipline order, although showing the proper business address, was served at a restaurant which employed Schwenke's namesake son. In addition, rule XII(d) requires personal attendance by an attorney at disciplinary hearings. Schwenke was not correctly served, nor was he present at the F–241 hearing that resulted in an order of a thirty-day suspension, with reinstatement conditioned upon restitution of $1,200.

■ We have grave concern about the irregularities in these proceedings. The notice of order to show cause was not served as required by the rules, and the order of discipline was imposed upon Schwenke in his absence. Significant licensing procedures are in place to assure that only qualified attorneys are admitted to the practice of law in this state. We think that suspension and disbarment proceedings call for adherence to minimum requirements of procedural due process, including notice of a hearing and notice that the attorney's license has been restricted or withdrawn. We therefore hold that service by certified or registered mail must be on the attorney *personally* and cannot be accomplished by delivery to a common-area receptionist at the address of the attorney's office. Such delivery does not amount to constructive notice. Nothing in the record or in the findings disputes Schwenke's claim that the signature on the return receipt was not that of his personal agent. We acknowledge that actual personal service will often be required when service by mail is ineffectual. However, in suspension or disbarment proceedings, actual notice is essential.

■ The special master also found that Schwenke had violated rule XVIII(a). This rule requires an attorney suspended for more than six months to notify clients, co-counsel, and opposing counsel of the suspension; to deliver records and refund

fees; and to file proof with this court within forty days after suspension that those acts have been completed. Under the rule, in F–281 Schwenke would have had to file the required proof by May of 1991, which he failed to do. He left this state in January of 1991 and did not return until April of 1992. On his return, he complied with the requirements of the rule though the compliance was untimely. We agree with the special master that Schwenke violated the rule, but that violation, standing alone, is not sufficient grounds to disbar Schwenke from the practice of law. Schwenke did not practice law during the year of suspension because he had gone to his native Samoa, and he did comply with the substantive mandate of the suspension order.

We next address Schwenke's argument that the Bar may not hold him in contempt for failing to repay a debt that was discharged in bankruptcy. He asserts that the order to show cause in F–241 was invalid because it was made after his debt to Gentle Shepherd had been discharged in bankruptcy.

The special master found that the "discharge of debtors" that Schwenke offered as evidence showed Gentle Shepherd as a named creditor but that Schwenke did not name Mr. or Mrs. Rundberg as creditors. The master therefore rejected Schwenke's argument. However, a review of the record shows that Schwenke acted properly. He correctly listed the $1,200 debt in his bankruptcy schedule of creditors as owed to Gentle Shepherd, his client. It is true that his correspondence refers to Gaye Rundberg, Ron Rundberg, and Gentle Shepherd interchangeably. In addition, the formal complaint refers to Gaye Rundberg of Gentle Shepherd, and the order of suspension requires payment to Ronald Rundberg. Nonetheless, the agreement signed by Schwenke and his client was executed by Gentle Shepherd, and all checks paid to Schwenke were issued by Gentle Shepherd. Gentle Shepherd therefore was Schwenke's creditor.

Schwenke argues that the Bar may not refuse to reinstate him for failure to pay a debt that was discharged in bankruptcy. He relies on sections 524(a)(2) and 525 of 11 U.S.C.A. Relevant portions of those statutes read as follows:

§ 524. Effect of discharge

(a) A discharge in a case under this title—

. . . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived. . . .

§ 525. Protection against discriminatory treatment

. . . [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license . . . of . . . a person that is or has been a debtor under [the Bankruptcy Act] . . . solely because such bankrupt or debtor . . . has not paid a debt . . . that was discharged under the Bankruptcy Act.

11 U.S.C.A. §§ 524(a)(2), 525 (1984).

Schwenke also relies on a section in the Historical and Statutory Notes that states, "This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, *such as a State bar association* . . . that can seriously affect the debtors' livelihood or fresh start. . . ." 11 U.S.C.A. § 525 (1984) (emphasis added).

■ We agree with Schwenke that his reinstatement may not be conditioned upon his payment of the $1,200 obligation to Gentle Shepherd that was discharged in bankruptcy. In our opinion, section 525 of 11 U.S.C.A. does not permit us to do that.

■ We conclude that the Bar's request to have Schwenke disbarred is disproportionate to the misconduct thus far shown and therefore deny the Bar's petition. We direct the Bar to reinstate Schwenke forthwith.

HALL, C.J., and DURHAM, STEWART and ZIMMERMAN, JJ., concur.