2004 UT 3

**In the Matter of the DISCIPLINE OF Sharon SONNENREICH, # 4918.**

**No. 20020187.**

Supreme Court of Utah.

Jan. 16, 2004.

Rehearing Denied March 4, 2004.

Kate A. Toomey, Billy L. Walker, Salt Lake City, for plaintiff.

James S. Lowrie, Salt Lake City, for defendant.

DURRANT, Associate Chief Justice:

¶ 1 This appeal concerns the authority of the Utah State Bar ("the Bar") to administratively suspend attorneys who fail to pay the Bar's annual licensing fee. It also concerns the authority of the Bar's Office of Professional Conduct ("the OPC") to bring an unauthorized practice of law complaint against an attorney who continues to practice law while administratively suspended.

¶ 2 In 1999, the Bar suspended Sharon Sonnenreich for failing to pay her annual licensing fee. Although she subsequently paid the fee, the OPC filed a complaint in district court alleging that she had practiced law without authorization while she was administratively suspended and requested appropriate discipline. Following oral arguments, the district court granted summary judgment in Sonnenreich's favor, holding that the Bar and the OPC had no authority to act as they did. On motion, the district court also awarded Sonnenreich attorney fees pursuant to section 78–27–56 of the Utah Code after finding that the OPC action was without merit and brought in bad faith. The OPC appeals both rulings. We affirm the summary judgment decision by the district court and remand for a finding on the issue of bad faith.

## BACKGROUND

¶ 3 "In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. We state the facts of this case accordingly." *Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 2, 70 P.3d 904 (citations and quotations omitted).

¶ 4 All attorneys who practice in the state of Utah are required to pay a licensing fee to the Bar by July 1 of each year as a condition of continued membership in the Bar. It is undisputed that in 1999 Sonnenreich failed to pay her annual licensing fee by July 1. Sonnenreich claims that on or about July 30, 1999, she paid her fee by faxing her credit card number on a bar dues form to the Bar. Sonnenreich also claims she included a change of address on this form. She admits, however, that she has been unable to locate a copy of the fax. The Bar maintains that it never received the fax, as evidenced, it argues, by the fact that it did not make any charge to Sonnenreich's credit card, did not send a receipt to Sonnenreich evidencing payment of the fee, and did not mail Sonnenreich an annual license sticker.

¶ 5 Sonnenreich was administratively suspended on September 7, 1999, for failing to pay the annual fee. According to the OPC, the Bar's executive director notified Sonnenreich of her administrative suspension by sending notice, via certified mail, to her address on record with the Bar. This information is supported by a copy of the certified letter receipt addressed to Sonnenreich at her last known place of employment. Sonnenreich claims that she never received this certified letter. On September 8, 1999, Sonnenreich's name was included on a list of all the attorneys suspended for failure to pay their bar dues, which was circulated to all appellate judges, clerks of court, district judges, and juvenile judges.

¶ 6 Sonnenreich claims she had no notice that she had been placed on administrative suspension until January 4, 2000. On that date, Sonnenreich's husband, while examining the Bar's website, discovered Sonnenreich had been listed as suspended. After learning of her suspension, Sonnenreich contacted the Bar and spoke with Arnold Birrell, the Bar's licensing administrator, about her status. During that conversation, Sonnenreich stated to Birrell that she was "a practicing attorney in Utah."

¶ 7 Following her conversation with Birrell, Sonnenreich paid her 1999 licensing fee plus the $100 late fee on January 7, 2000. The Bar immediately reinstated Sonnenreich from her administrative suspension. That same day, the OPC began investigating Sonnenreich for the unauthorized practice of law, apparently based solely on Sonnenreich's comment to Birrell that she was a "practicing attorney." On January 19, 2000, the OPC sent Sonnenreich a notice of informal complaint. This informal complaint came before

the screening panel on March 30, 2000. The screening panel found that Sonnenreich had violated rules 5.5 and 8.4(a) of the Utah Rules of Professional Conduct for "practic[ing] law while ... suspended for nonpayment of her annual Bar licensing dues." On a screening panel information decision sheet prepared by the OPC, the screening panel indicated that it had found "by a preponderance of the evidence" that "[t]here [was] probable cause to believe that [Sonnenreich] was engaged in professional misconduct with regard to [r]ule 5.5" and recommended "that a formal complaint be filed against [Sonnenreich]."

¶ 8 Based upon the screening panel's recommendation, the OPC filed a complaint against Sonnenreich on April 24, 2000. In the complaint, the OPC alleged that Sonnenreich had "engaged in the unauthorized practice of law when she practiced law and held herself out as an attorney during the period of her suspension prior to her reinstatement." The complaint requested that Sonnenreich "be appropriately sanctioned for" violating rules 5.5 and 8.4(a) of the Utah Rules of Professional Conduct. Sonnenreich filed her answer on May 24, 2000, and filed a motion for judgment on the pleadings on June 9, 2000.[1]

¶ 9 In her motion, Sonnenreich made four arguments: (1) that the "Bar has no power to suspend attorneys or judges," (2) that the complaint filed by the OPC could "only be instituted by the Utah Board of Bar Commissioners," (3) that the complaint filed by the OPC failed to "state 'in plain and concise language the facts upon which the charge of unprofessional conduct is based,' [Utah Rules of Discipline and Disability 11(a) ]," and (4) that the complaint, on its face, was not grounded "upon a finding in the screening panel of 'probable cause to believe that there are grounds for public discipline and that a formal complaint is merited.' [RLDD 11(a) ]." The district court concurred with Sonnenreich's arguments supporting these assertions and granted judgment on the

pleadings on January 9, 2001.[2] In so doing, the district court found that our decision in *In re Crandall,* 784 P.2d 1193 (Utah 1989), "made clear the necessity for actual notice [prior to suspensions]," and that "it [was] undisputed no actual notice of the alleged suspension was received by Sonnenreich." The district court later recognized that Sonnenreich's motion for judgment on the pleadings and the OPC's response were both accompanied by affidavits, and converted the motion for judgment on the pleadings into a motion for summary judgment. *See* Utah R. Civ. P. 12(c). Accordingly, the signed judgment dismissed the complaint with prejudice "[p]ursuant to Rule 56(c) of the Utah Rules of Civil Procedure."

¶ 10 Following this dismissal, Sonnenreich filed a motion for attorney fees pursuant to section 78–27–56 of the Utah Code. Based on Judge Stirba's prior ruling, and specifically on her reliance on *In re Crandall* and *In re Discipline of Schwenke,* 849 P.2d 573 (Utah 1993), the district court[3] found the OPC's complaint to be meritless. The district court also determined that the action was brought in bad faith, "given the lack of a foundation for the action, combined with the total lack of factual basis on the issue of notice." The court indicated in a footnote that the lack of foundation was "[p]articularly true in light of the existing case law." Based on these findings, the district court ordered the Bar to pay Sonnenreich $30,886.25 in attorney fees at 4.28% interest per annum.

¶ 11 The OPC appeals, challenging both the district court's dismissal of the complaint and the award of attorney fees. We have jurisdiction to hear this appeal pursuant to article VIII, section 4 of the Utah Constitution and section 78–2–2(3) of the Utah Code.

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 12 "[S]ummary judgment is only appropriate where 'there is no genuine issue

---

1. Sonnenreich continues to maintain that "[she] was taking a break from downtown to be with her toddler during the summer of 1999" and "still doesn't know what she did to practice law."

2. This initial memorandum decision was issued by Judge Stirba.

3. This subsequent motion for attorney fees was handled by Judge Burton.

as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' Utah R. Civ. P. 56(c). When reviewing a court's decision to grant summary judgment, we examine the court's legal conclusions for correctness." *Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 13, 70 P.3d 904 (citations and internal quotation omitted). In addition, article VIII, section 4 of the Utah Constitution provides that "[t]he Supreme Court by rule shall govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law." Accordingly, we review the district court's interpretation of our rules for correctness. *See Barnard v. Sutliff*, 846 P.2d 1229, 1237 (Utah 1992) ("[O]nly this court has the rulemaking power over the practice of law and the procedures of the Bar.").

## II. ADMINISTRATIVE SUSPENSIONS

¶ 13 Sonnenreich argued before the district court that only the Utah Supreme Court, not the Bar, has the authority to suspend attorneys or judges. Sonnenreich also objected to the Bar's issuance of a suspension without prior notice. The district court agreed with Sonnenreich that the Bar has no authority to suspend attorneys and held that actual notice is required in suspension proceedings. The district court based this holding on our decision in *In re Crandall*, 784 P.2d 1193 (Utah 1989). On appeal, the OPC argues that Utah's Rules of Lawyer Discipline and Disability ("RLDD") authorize the Bar to administratively suspend attorneys for failure to pay bar dues. Moreover, the OPC contends that only compliance with the notice requirements contained in the RLDD, rather than actual notice, is required in the context of an administrative suspension. Before determining whether the Bar has the authority to administratively suspend attorneys for failure to pay the Bar's annual licensing fee, we must first identify the differences between administrative and disciplinary actions.

### A. The Distinction Between Administrative Suspensions and Disciplinary Suspensions

¶ 14 This is not the first time we examine the differences between administrative and disciplinary actions. Almost sixty years ago, in *In re Oliver*, 97 Utah 1, 89 P.2d 229 (1939), we recognized that the actions taken against an attorney for failure to pay licensing fees differ from other disciplinary actions. In *Oliver*, the Utah State Bar Board of Commissioners ("the Board") refused to recommend that an attorney be reinstated after he was suspended for failing to pay his dues. 97 Utah at 3, 89 P.2d at 230. The Board based its refusal on Section 73, Rule VII of the Revised Rules of the Utah State Bar Governing Professional Conduct and Discipline.[4] At the time, this rule allowed the Board to refuse to reinstate an attorney "except upon an affirmative showing to the satisfaction of the [Board] that the petitioner possesse[d] moral qualifications and learning in general education and in law as required at the time for Admission to the Practice of Law in the State of Utah." *Oliver*, 97 Utah at 4, 89 P.2d at 230. Because Oliver had been discharged from his employment prior to his petition for readmission "for obtaining a [railroad travel] pass under false pretenses," and for later allegedly lying that the woman for whom he bought the pass was his wife, the Board felt he did not possess the good moral character necessary for admission to the Bar. *Id.*

¶ 15 In criticizing the Board's action, we noted that membership in the Bar contemplates two distinct aspects: "(1) [t]he status of being a member; and (2) the right to exercise the privileges of membership." *Oliver*, 97 Utah at 9, 89 P.2d at 232. We noted that " '[d]isbarment' is the severance of the status and privileges. 'Suspension' is the temporary forced withdrawal from the exercise of office, powers, prerogatives, or privileges as a member." *Oliver*, 97 Utah at 10, 89 P.2d at 233 (citation omitted). Hence, we reasoned that a suspension for failure to pay dues "terminates solely the right to exercise the privileges of the status of a member. The termination of that right for such reasons casts no reflection upon the member's moral qualifications." *Id.* (emphasis omitted). We went on to state, "In Section 73, the reference of the petition for reinstate-

---

4. This early rule is similar to the current RLDD 25(e).

ment to an investigating committee or to the committee of Bar Examiners has ... application to either a disbarment *or a suspension for conduct indicative of a lack of moral or a lack of legal qualifications.*" *Oliver,* 97 Utah at 10–11, 89 P.2d at 233 (emphasis added). Thus, there would have been no basis under Section 73 to refuse reinstatement following a suspension for the failure to pay dues, because such a suspension was not indicative of either a lack of moral or legal qualifications. Rather, petitioning for reinstatement from a suspension for failure to pay licensing fees was "strictly [a question] of dues and penalties." *Oliver,* 97 Utah at 8, 89 P.2d at 232. Therefore, in *Oliver* we recognized that a difference exists between disciplinary actions for lack of the qualifications necessary to practice law, and administrative suspensions for the non-payment of dues.[5]

### B. Authority of the Bar to Impose Administrative Suspensions

■ ¶ 16 Utah has an integrated bar, which is "an association of attorneys in which membership and dues are required as a condition of practicing law in a[s]tate." *Keller v. State Bar of Cal.,* 496 U.S. 1, 5, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990). *See In re Integration and Governance of the Utah State Bar,* 632 P.2d 845, 846 (Utah 1981) (adopting the Utah State Bar Rules of Integration and Management). According to the Utah State Bar Rules of Integration and Management ("RIM"),[6] "[a]ll persons licensed in Utah to practice shall be members of the Utah State Bar in accordance with the rules of the

Court." RIM A.1. To obtain membership in the Bar, a person must first meet the "[q]ualifications and requirements for admission to the practice of law ... as set forth in the Rules of the Utah State Bar for Admission to the Utah State Bar." RIM C.10(a). If a person meets these requirements, with

> [t]he approval by the [Supreme] Court ... any person ... shall [be entitled] to be enrolled in the Bar upon his taking an oath to support the Constitutions of the United States and of this state and to discharge faithfully the duties of an attorney to the best of his knowledge and ability, and payment of the fee fixed by the Board of the Bar with the approval of the Court, *and thereafter to practice law upon payment of the license fees herein provided.*

*Id.* (emphasis added); *accord* Utah Code Ann. § 78–51–10 (1996) (repealed). With regard to the annual fees, the RIM require "[e]very person practicing, or holding himself out as practicing law within this state ... prior to so doing ... [to] pay to the Bar a license fee." RIM C.16; *accord* Utah Code Ann. § 78–51–21 (1996) (repealed). The payment of the annual licensing fee is also required by rule 8 of the RLDD, which provides that "[e]very lawyer admitted to practice in this state shall pay to the Bar on or before July 1 of each year an annual license fee for each fiscal year." Thus, the rules repeatedly and clearly require Bar members to pay their annual licensing fee as a condition of continuing to practice law.

¶ 17 Notwithstanding this clear requirement, Sonnenreich questions the Bar's au-

---

5. Many states make this distinction between administrative and disciplinary suspensions. *See, e.g., In re Amendments to the Rules Regulating the Fla. Bar,* 718 So.2d 1179, 1180 (Fla.1998) (" '[N]ondisciplinary' suspensions from membership [for delinquency in the payment of dues] are to be distinguished from suspensions imposed in disciplinary proceedings."); *Satterwhite v. State,* 979 S.W.2d 626, 628 (Tex.Crim.App.1998) ("[A] lawyer shall not 'engage in the practice of law ... where a lawyer's right to practice has been administratively suspended for failure to timely pay required fees.' " (citing Tex. Disciplinary R. of Prof. Conduct 8.04(a)(11)(1994))). *See also* Mass. Ann. Laws ch. 2, § 2.6 (Law. Co-op.2002) ("Failure ... to cooperate with Bar Counsel's request and any subsequent investigation may result in disciplinary action or administrative suspension...."); S.C.App. Court R. 415 (2000)

(failure to pay annual licensing fees results in administrative suspension).

6. For purposes of this case, we rely on the version of the RIM in effect at the time the complaint was filed against Sonnenreich on April 24, 2000. Since that time, the RIM have been modified twice. *See* Utah C. Jud. Admin. Ch. 16, RIM, compiler's notes.

As originally adopted, the RIM basically mirrored the "text of Utah Code Annotated, 1953, Title 78, Chapter 51." *In re Integration and Governance of the Utah State Bar,* 632 P.2d 845, 845 (Utah 1981). Most of the sections contained in that chapter, however, were repealed effective April 30, 2001. *See* Utah Code Ann. §§ 78–51–1 to –45, annotation.

thority to administratively suspend attorneys for failing to pay the annual licensing fee. Although the Bar has not been given the express power, via rule, to impose such suspensions, the power to do so is necessarily implied by the rules. At the very outset, RIM A.1 states,

> Under the power vested to it by the Constitution and laws of the State of Utah[,] the Utah Supreme Court hereby creates and perpetuates under its direction and control an organization known as the Utah State Bar.... The purposes, duties[,] and responsibilities of the Utah State Bar include, *but are not limited to,* the following: ... (d) to regulate and to discipline persons practicing law.

(Emphasis added.) Further, RIM C.20 provides that

> [n]o person ... whose right or license to ... practice has terminated either by disbarment, suspension, failure to pay his license fee or otherwise, shall practice or assume to act or hold himself out to the public as a person qualified to practice law or to carry on the calling of an attorney within the state.

*Accord* Utah Code Ann. § 78-51-25 (1996) (repealed). Where the RIM and RLDD indicate that attorneys cannot practice law without paying the required dues, and RIM C.20 states that attorneys who fail to pay the fee will be temporarily disqualified from practicing law, the Bar has the implicit authority under RIM A.1 to administratively suspend attorneys who fail to comply with these requirements.

¶ 18 Contrary to the district court's interpretation, we implicitly upheld this authority in *In re Crandall,* 784 P.2d 1193 (Utah 1989).

That case involved a recommendation for an interim suspension, based on an attorney's failure to file required probationary reports after being administratively suspended for failure to pay his bar fees. *Id.* at 1195. Although we ultimately refused to accept the Bar's recommendation of discipline because the Bar's interpretation of rule XX[7] essentially allowed the Bar, after placing an attorney on "administrative suspension" for failing to pay bar dues, to continue the suspension for unrelated reasons after the attorney tendered his or her delinquent fee, we never questioned the Bar's ability to administratively suspend Crandall for his initial nonpayment. *Id.* at 1196-97. Rather, we objected to the Bar's discipline of Crandall for claimed unprofessional behavior caused by his continued suspension after he tendered his dues. Thus, we explained that "it is inappropriate that the Bar should be able to refuse reinstatement after the delinquent fee is paid for a reason unrelated to the initial suspension." *Id.* at 1196. Moreover, our holding relied heavily upon the "close nexus" between the Bar's ability to continue Crandall's suspension for failure to pay his dues after dues were tendered and the subsequent complaints brought against him for failing to file probationary reports caused by the Bar's refusal. *Id.* at 1197. *Crandall* did not purport to prohibit the Bar from administratively suspending those attorneys who fail to pay their annual licensing fees.

¶ 19 In sum, given the distinction between administrative and disciplinary suspensions and the clear requirement that attorneys who fail to pay fees will be suspended, we hold that the Bar has the authority to administratively suspend attorneys for failing to pay appropriate annual licensing fees.[8]

7. Rule XX provided that an attorney suspended for the nonpayment of a licensing fee could apply in writing for re-enrollment by tendering the delinquent fees and a $100.00 filing fee.... Upon receiving the same the Utah State Bar Commission [was required to] accept it and order re-enrollment, unless the Board for some justifiable cause deem[ed] it not to be in the best interest of the Bar and the public to do so.

This rule was later amended and is now contained in RLDD 8(b).

8. In arguing before the district court that the Bar has no authority to administratively suspend at-

torneys, Sonnenreich cited a number of cases in which we addressed the Bar's role in attorney discipline. *See Barnard v. Utah State Bar,* 804 P.2d 526, 529 (Utah 1991); *In re Disciplinary Action of McCune,* 717 P.2d 701, 709 (Utah 1986); *In re Discipline of Babilis,* 951 P.2d 207, 213 (Utah 1997). While these cases explain that the authority to order disbarments, suspensions, and public reprimands resides in this court, they do not suggest that this authority may never be delegated to the Bar. Indeed, while we have limited the Bar's authority to engage in disciplinary actions otherwise reserved to this court, we have implicitly granted the authority to the Bar

### C. Notice Required For Administrative Suspensions

¶ 20 Having determined that the Bar has the authority to administratively suspend attorneys who fail to pay annual licensing fees, we next consider what type of notice is required in connection with administrative suspensions. The RLDD require the Bar to give notice that an attorney has been administratively suspended. Rule 8(b) provides that "[t]he Executive Director of the Bar shall give notice of such removal from the rolls [for the failure to pay the annual licensing fee] to such non-complying member at the address on record at the Bar, to the Utah Supreme Court and to the judges of the district courts." Prior to today, we have not determined what kind of notice is necessary to meet this requirement.

¶ 21 In granting summary judgment below, the district court held that actual notice is required before an attorney can be administratively suspended for failing to pay the annual licensing fee. The OPC argues on appeal that actual notice is not required and that its compliance with RLDD 8(b) was sufficient. We agree that RLDD 8(b) does not contemplate actual notice for administrative suspensions.

¶ 22 Actual notice is that notice which "is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry." [9] Black's Law Dictionary 733 (6th ed.1991). By providing that the Bar need only give notice to non-complying members "at the address on record at the Bar," RLDD 8(b) makes clear that actual notice is not required.[10]

¶ 23 Sonnenreich argues that a license is a property right that cannot be taken away without procedural due process and that, therefore, any suspension, even an administrative one, requires actual notice prior to the suspension. Sonnenreich cites *In re Worthen,* in which we stated that "Utah's appellate courts have never hesitated to consider claims alleging due process violations when professionals risk losing their professional license or means of employment through the action of a public disciplinary body." 926 P.2d 853, 877 (Utah 1996) (citing *In re Discipline of Schwenke,* 849 P.2d 573, 576 (Utah 1993)) (further citations omitted). Sonnenreich is correct in asserting that a lawyer is entitled to procedural due process guarantees in disciplinary actions. *See In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (noting attorneys facing disbarment proceedings are entitled to procedural due process, including "fair notice" and an opportunity to be heard). However, "due process is flexible and calls for the procedural protections that the given situation demands." *Worthen,* 926 P.2d at 876 (quotations and citations omitted). Given the fundamental difference between administrative and disciplinary suspensions, we hold that notice mailed to any "non-complying member at the address on record at the Bar" is sufficient to satisfy due process in the context of a non-disciplinary, administrative suspension for failing to pay the Bar's annual licensing fee.

### III. DISCIPLINARY ACTIONS FOR THE UNAUTHORIZED PRACTICE OF LAW

¶ 24 The OPC appeals the district court's finding that the OPC has no authority to bring a district court action against an attorney for practicing while administratively suspended. The district court reasoned that our decision in *In re Crandall,* 784 P.2d 1193 (Utah 1989), precluded such an action and that, regardless, any action taken in a district court against an attorney for practicing law

---

to issue non-disciplinary administrative suspensions against attorneys who fail to pay annual licensing fees. *See supra* Part II.B; *c.f. Crandall,* 784 P.2d at 1196–97.

**9.** This is to be distinguished from constructive notice, where information or knowledge of a fact is imputed to a person by law "because he could have discovered the fact by proper diligence, and

his situation was such as to cast upon him the duty of inquiring into it." Black's Law Dictionary 733 (6th ed.1991).

**10.** Actual notice is required, however, for the Bar to seek disciplinary sanctions predicated upon the unauthorized practice of law while administratively suspended. *See infra* Part III.3.

while suspended must be instituted by the Board of Bar Commissioners, as opposed to the OPC. We examine each issue, looking first to whether the OPC has the authority to file an unauthorized practice of law complaint in district court.

### A. *The OPC's Authority to File Unauthorized Practice of Law Complaints*

■ ¶ 25 Sonnenreich argued, and the district court agreed, that the OPC had no authority to bring an unauthorized practice of law complaint. The district court presumably based its conclusion on a strict interpretation of RIM C.20 in finding that "district court actions for practicing while suspended must be instituted by the Bar Commission."

¶ 26 RIM C.20 provides as follows:

> No person who is not duly admitted and licensed to practice law within this state nor any person whose right or license to so practice has terminated either by disbarment, suspension ... or otherwise, shall practice or assume to act or hold himself out to the public as a person qualified to practice law or to carry on the calling of an attorney within the state. Such practice ... by any such ... suspended person shall not constitute a crime, but this prohibition against the practice of law by any such person shall be enforced by such civil action or proceedings, including writ, contempt or injunctive proceedings, as may be necessary and appropriate, which action or which proceedings shall be instituted by the Board.[11]

*Accord* Utah Code Ann. § 78–51–25 (1996) (repealed). Contrary to the district court's interpretation, RIM C.20 does not refer to the OPC's authority to seek appropriate sanctions against attorneys who practice while suspended; rather, it addresses the mechanisms by which the Bar may enforce such sanctions when an attorney fails to comply with them. The OPC's authority to initiate lawyer discipline derives from the RLDD.

¶ 27 Rule 1(c) of the RLDD states that "[a]ll disciplinary proceedings shall be conducted in accordance with the rules and proceedings described herein." RLDD 8(b) further provides that "[a]ny attorney who shall practice law while suspended for non-payment of the license fee violates the Rules of Professional Conduct *and may be disciplined for practicing while suspended for non-payment of dues.*" (Emphasis added.) The responsibility for seeking such discipline, according to rule 11(a), resides in the OPC. We believe an overview of the disciplinary process will be helpful in explaining why this responsibility is delegated to the OPC.

¶ 28 The RLDD provide that disciplinary proceedings for practicing while suspended for failing to pay annual dues "may be initiated against any member of the Bar by any person, OPC counsel or the [Ethics and Discipline Committee of the Utah Supreme Court]" by filing an informal complaint with the Bar in writing. RLDD 10(a)(1). Once an informal complaint is filed, OPC counsel is required to "conduct a preliminary investigation to ascertain whether the informal complaint is sufficiently clear as to its allegations." RLDD 10(a)(3). If the allegations are clear and the informal complaint cannot be resolved in the public interest, the complainant's interest, and the respondent attorney's interest, "or if good cause otherwise exists to bring the matter before the screening panel," OPC counsel must serve a notice of informal complaint on the respondent attorney. RLDD 10(a)(4). When the respondent files his or her answer, or after twenty days in cases in which the respondent fails to respond, OPC counsel must "refer the case to a screening panel for investigation, consideration and determination." RLDD 10(a)(5). A screening panel then reviews all informal complaints, "including all the facts developed by the informal complaint, answer, investigation and hearing, and the recommendations of OPC counsel," and makes one of six determinations ranging from dismissal to directing that a formal complaint be filed against the respondent attorney. RLDD 10(b)(1)-(5). When a screening panel requires disciplinary

---

11. RIM III.T (the current version of RIM C.20) has replaced the word "Board" with "Bar." *See*

RIM III.T.

action, RLDD 11(a) clearly identifies the party responsible for following the screening panel's determinations:

> In the event the screening panel finds probable cause to believe that there are grounds for public discipline and that a formal complaint is merited, *OPC counsel shall prepare and file with the district court a formal complaint* setting forth in plain and concise language the facts upon which the charge of unprofessional conduct is based and the applicable provisions of the Rules of Professional Conduct.

(Emphasis added.)

¶ 29 Thus, where, as here, the screening panel found probable cause to believe a formal complaint was warranted, the OPC had the authority under the RLDD to file the complaint against Sonnenreich for practicing while suspended.

### B. In re Crandall

¶ 30 Notwithstanding authorization from the RLDD, Sonnenreich argues, and the district court agreed, that our decision in *In re Crandall,* 784 P.2d 1193 (Utah 1989), precludes the OPC from seeking to discipline attorneys who practice while administratively suspended. The OPC counters that the district court erred in its interpretation of *Crandall,* and we agree.

¶ 31 In *Crandall,* the Bar sent a letter to attorney Crandall stating that he had been dropped from the roll of qualified attorneys authorized to practice law for failing to pay his yearly licensing fee in accordance with rule XX of the Procedures of Discipline.[12] *Id.* at 1195. Crandall claimed the nonpayment was the result of a misunderstanding with his bookkeeper regarding the time payment was due. *Id.* Although Crandall contacted the Bar and offered to hand-deliver his delinquent fee, he was told that he would have to submit the delinquent fee, accompanied by a written request for acceptance, to the Bar Commission's executive committee. *Id.* Crandall submitted his request in May; however, review of the request was deferred twice until a full meeting of the executive committee occurred near the end of August.

*Id.* In the time between Crandall's tender of dues and the executive committee meeting in August, Crandall was required to appear before a Bar hearing panel to address his failure to submit reports for a separate matter that predated his failure to pay fees. *Id.* Although Crandall argued in that hearing that he had been unable to file the monthly reports due to his indefinite suspension and the Bar's refusal to reinstate him, the Bar panel nonetheless recommended Crandall be suspended retroactively for his failure to file the reports. *Id.*

¶ 32 On appeal, Crandall challenged rule XX, arguing that "[i]t allow[ed] the Bar, after suspending an attorney for failure to pay the annual licensing fee, to continue suspension for reasons other than the failure to pay the fee after the attorney [had] tendered his or her delinquent fee." *Id.* at 1195–96. We agreed with Crandall and stated, "there is no logical connection between an attorney's failure to pay his or her licensing fee and claimed unfitness to practice law." *Id.* at 1196. The district court relied upon this language in holding that the Bar was not authorized to bring the complaint. The district court reasoned that "[b]y premising Sonnenreich's violation of [r]ule 5.5, which forbids practicing while suspended, on an administrative suspension, the Bar [was] doing exactly what [this] Court forbade in *Crandall.*"

¶ 33 In relying on this statement, the district court overlooked our further clarification that "[t]he suspension of attorneys for failure to pay the license fee is necessary and appropriate," and that what we objected to in *Crandall* was the Bar's ability "to refuse reinstatement after the delinquent fee is paid for a reason unrelated to the initial suspension." *Id.* We explained that *this* extension of the administrative suspension, which allowed the Bar to further discipline attorneys for action taken during the suspension, was an objectionable end-run approach to the other procedures necessary for disciplining attorneys—not that the Bar was foreclosed from seeking to discipline attorneys who practiced while administratively suspended. *See id.* Hence, in this case, the *Crandall*

---

12. Rule XX is now contained in RLDD 8(b). *See* *supra* note 7.

situation never arose because Sonnenreich was immediately reinstated after submitting the annual licensing fee plus the $100 late fee. The OPC did not seek to penalize Sonnenreich by capitalizing on circumstances that were unrelated to the reason for her suspension, as in *Crandall;* rather, it sought disciplinary action against her for practicing while administratively suspended.

¶ 34 While there may be no direct connection between an attorney's failure to pay the Bar's annual licensing fee and an unfitness to practice law, there is no question that an attorney may be disciplined for continuing to practice law while administratively suspended. *See* RLDD 8(b) ("Any attorney who shall practice law while suspended for non-payment of the license fee violates the Rules of Professional Conduct and may be disciplined for practicing while suspended for non-payment of dues."). The more difficult issue is what type of notice an attorney must receive before he or she may be so disciplined.

### C. Notice Required for Disciplinary Actions

■ ¶ 35 In dismissing the OPC's action, the district court reasoned that Sonnenreich was entitled to actual notice of her administrative suspension, and that "it [was] undisputed [that] no actual notice of the alleged suspension was received by Sonnenreich." On appeal, the OPC contends that giving notice of an administrative suspension to non-complying members "at the address on record at the Bar" in compliance with RLDD 8(b) is sufficient to satisfy any notice requirement. Recognizing that "this issue is a matter of first impression for [this] Court," however, the OPC asks for guidance so that the Bar may amend its procedures if necessary.

¶ 36 In considering this issue, we look to our decision in *In re Discipline of Schwenke,* 849 P.2d 573 (Utah 1993). *Schwenke* involved a petition to disbar attorney Schwenke from the practice of law. *Id.* at 574. In that case, when Schwenke failed to appear at an order-to-show-cause hearing before the district court, we suspended him for thirty days on recommendation from the Bar. *Id.* at 575. The order was sent, via certified mail, to Schwenke's business address and received by his receptionist. *Id.* When Schwenke subsequently continued to practice during the thirty-day suspension, a special master recommended that Schwenke be disbarred. *Id.* In rejecting the special master's recommendation, we noted "grave concern[s] about the irregularities in [the] proceedings." *Id.* at 576. We stated,

> Significant licensing procedures are in place to assure that only qualified attorneys are admitted to the practice of law in this state. We think that suspension and disbarment proceedings call for adherence to minimum requirements of procedural due process, including notice of hearing and notice that the attorney's license has been restricted or withdrawn. We therefore hold that service by certified or registered mail must be on the attorney *personally* and cannot be accomplished by delivery to a common-area receptionist at the address of the attorney's office.... We acknowledge that actual personal service will often be required when service by mail is ineffectual. However, in suspension or disbarment proceedings, *actual notice is essential.*

*Id.* (emphasis added).

■ ¶ 37 "Utah's constitutional guarantee of due process is substantially the same as the due process guarantees contained in the Fifth and Fourteenth amendments to the United States Constitution." *In re Worthen,* 926 P.2d 853, 876 (Utah 1996) (citing *Untermyer v. State Tax Comm'n,* 102 Utah 214, 222, 129 P.2d 881, 885 (1942)). In conformity with due process, an attorney is entitled to procedural due process guarantees in disciplinary actions. *See In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (noting an attorney is entitled to "fair notice" in the face of disbarment proceedings); *Worthen,* 926 P.2d at 877 ("Utah's appellate courts have never hesitated to consider claims alleging due process violations when professionals risk losing their professional license or means of employment through the action of a public disciplinary body." (citing *Schwenke,* 849 P.2d at 576 (further citations omitted))). These due process guarantees include, "[a]t a minimum, 'timely and ade-

quate notice and an opportunity to be heard in a meaningful way.' " *Worthen,* 926 P.2d at 876 (citing *Nelson v. Jacobsen,* 669 P.2d 1207, 1211 (Utah 1983)). Because "due process is flexible and calls for the procedural protections that the given situation demands," *id.* (internal quotation and citation omitted), giving notice to an attorney who fails to pay his or her licensing fees "at the address on record at the Bar" is sufficient notice for an administrative suspension. *See* RLDD 8(b). However, such notice is insufficient in the context of a disciplinary action for the unauthorized practice of law based on that suspension. In disciplinary proceedings, in accordance with due process, actual notice is required. *See Schwenke,* 849 P.2d at 576.

¶ 38 In this case, the district court granted summary judgment to Sonnenreich after determining that Sonnenreich had no actual notice of her administrative suspension during the time in which she allegedly continued to practice law. We review the district court's grant of summary judgment for correctness. *Home Builders Ass'n v. City of N. Logan,* 1999 UT 63, ¶ 6, 983 P.2d 561. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).

¶ 39 Here, it is undisputed that Sonnenreich received no actual notice. Sonnenreich submitted an affidavit to the district court stating she had no actual notice of her administrative suspension until January 6, 2000. The only rebuttal the OPC provided to this statement was evidence showing that Sonnenreich had a history of tardy payment, that her credit card was never charged, and that she never received confirmation of her payment in the form of the annual licensing sticker issued by the Bar. We find this evidence insufficient to establish actual notice, particularly in light of our decision in *Schwenke. See Schwenke,* 849 P.2d at 576

(finding that a certified letter received by the attorney's receptionist was insufficient to constitute actual notice).

¶ 40 We acknowledge that requiring the Bar to establish that an attorney had actual notice of his or her administrative suspension during the time in which the attorney continued to practice law will increase the Bar's burden when seeking disciplinary sanctions beyond sending notice to the attorney's address on record at the Bar. However, we do not believe this requirement will necessarily or implicitly mandate that the Bar adopt personal service measures in all instances. Indeed, we believe that, in the majority of cases, notification by registered or certified mail will continue to be entirely adequate. Of course, the Bar may ensure that actual notice has been received by simply sending notice, via personal service, to any non-complying attorney.[13] *See Schwenke,* 849 P.2d at 576 ("We acknowledge that actual personal service will often be required when service by mail is ineffectual."). Accordingly, we disagree with the OPC's assertion that this holding will require the Bar to "abandon[ ] its efforts to predicate discipline for practicing law upon an administrative suspension."

¶ 41 The OPC also argues that "inasmuch as the [d]istrict [c]ourt case terminated almost immediately," it has not been given the opportunity to establish whether Sonnenreich received actual notice. The OPC asserts that it should be allowed to elicit "testimony from Sonnenreich with cross-examination and an opportunity for the trial court to assess her credibility." We disagree. Rule 56(e) of the Utah Rules of Civil Procedure states that where a motion for summary judgment "is made and supported as provided in [rule 56(c) ], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." Utah R. Civ. P. 56(e). "While the moving party bears the burden of proof on its summary judg-

---

13. We do not herein purport to prescribe or dictate the manner by which the Bar must satisfy its burden of demonstrating actual notice. We merely emphasize that, when seeking disciplinary sanctions against an attorney for practicing law while administratively suspended, it is the Bar's burden to establish that the respondent attorney received actual notice of the suspension and continued to practice law with knowledge of that suspension.

ment motion, ... 'in opposing a motion for summary judgment, the plaintiff still has the ultimate burden of proving all the elements of his or her cause of action.' " *Gerbich v. Numed Inc.*, 1999 UT 37, ¶ 12, 977 P.2d 1205 (quoting *Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 339 (Utah 1997)). Once the allegations in a complaint are challenged, the non-moving party has an obligation to come forward with sufficient proof to show that the non-moving party is entitled to proceed to trial. *Id.* It is not enough to rest on allegations alone, particularly when the parties have had an opportunity for discovery. *Id.*

¶ 42 As previously noted, the OPC presented no evidence countering Sonnenreich's affidavit in which she stated she had received no actual notice. Had the OPC wished to rebut Sonnenreich's affidavit, it should have moved for further discovery pursuant to rule 56(f) of the Utah Rules of Civil Procedure. Accordingly, summary judgment was appropriate and we affirm the district court's ruling.

¶ 43 The OPC also challenges the district court's finding that "the [c]omplaint fail[ed] to provide sufficient facts to satisfy either Rule 11 of the [RLDD] or Rule 8 of the Utah Rules of Civil Procedure." Because we have found that Sonnenreich did not receive actual notice we need not address the sufficiency of the complaint.

### IV. ATTORNEY FEES

¶ 44 The OPC argues that the district court erred in awarding attorney fees based upon a determination that the disciplinary action against Sonnenreich was without merit and brought in bad faith. The OPC further contends that the amount of attorney fees awarded by the district court was unreasonable.

¶ 45 Section 78–27–56 of the Utah Code provides as follows: "In civil actions, the court shall award reasonable attorney's fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith...." Utah Code Ann. § 78–27–56(1) (2002). Whether a claim is "without merit" is a question of law and we review it for correctness. *Jeschke v. Willis*, 811 P.2d 202, 203 (Utah Ct.App.1991). Whether a claim has "not [been] brought or asserted in good faith" is a question of fact and we review it under a clearly erroneous standard.[14] *Id.* at 204; *see also Pennington v. Allstate Ins. Co.*, 973 P.2d 932, 939 n. 3 (Utah 1998) (clarifying that "good faith" is a factual finding based on the party's subjective intent, while a "without merit" finding is a matter of law).

¶ 46 Section 78–27–56 of the Utah Code is narrowly drawn and "not meant to be applied to all prevailing parties in all civil suits." *Cady v. Johnson*, 671 P.2d 149, 151 (Utah 1983). To safeguard against an overly broad application, a prevailing party must demonstrate two distinct elements before a court may award attorney fees; namely, that the claim is (1) without merit, and (2) not brought or asserted in good faith. *Id.; see* Utah Code Ann. § 78–27–56(1).

¶ 47 We first address whether the complaint in this case was without merit within the meaning of section 78–27–56. A claim is without merit if it is "of little weight or importance having no basis in law or fact." *Cady*, 671 P.2d at 151. Because Sonnenreich had no actual notice, as required by *Schwenke*, of her administrative suspension during the time she allegedly practiced law prior to the institution of the disciplinary action against her, we affirm the district

---

14. When challenging a district court's findings of fact, the challenging party "must show that the evidence, viewed in a light most favorable to the [district] court, is legally insufficient to support the contested finding." *Chipman v. Miller*, 934 P.2d 1158, 1162 (Utah Ct.App.1997) (internal quotation and citation omitted). Here, the OPC failed to sufficiently marshal the evidence necessary to challenge the district court's factual findings. However, since the district court's bad faith finding was based primarily on memoranda submitted by the parties, as well as its interpretation of our *Crandall* case, the OPC's failure to marshal is not dispositive. *See id.* at 1162–63 ("[B]ecause the [district] court made its ruling primarily on memoranda submitted by the parties, and because the [district] court found bad faith based only on its interpretation of [a code provision], the [appellants'] failure to marshal the evidence is not fatal."). We therefore review the OPC's challenge to the district court's findings.

court's finding that the action in this case was without merit.

¶ 48 We next turn to whether the OPC brought this action in good faith. Good faith is defined as having "(1) [a]n honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others." *Cady,* 671 P.2d at 151. To establish a lack of good faith, or "bad faith" under section 78–27–56, a party must prove that one or more of these factors is lacking. In this case, the district court found that the OPC acted in bad faith for two reasons. It stated that "[g]iven the lack of foundation for the action, combined with the total lack of a factual basis on the issue of notice, the Court finds this matter could not have been brought with an honest belief in its propriety." The district court footnoted that the lack of foundation for the action was "particularly true in light of the existing case law."

¶ 49 We emphasize that although an action must be meritless to award attorney fees under section 78–27–56, the mere fact that an action is meritless does not necessarily mean that the action is also brought in bad faith. *See Utah Dep't of Soc. Servs. v. Adams,* 806 P.2d 1193, 1198 n. 6 (Utah Ct. App.1991). Such an interpretation would conflate the two prongs required under the statute. Thus, it does not follow that simply because the OPC had no legal foundation to bring the action that it was also acting in bad faith. Rather, a finding of bad faith turns on a factual determination of a party's subjective intent. *Pennington,* 973 P.2d at 939 n. 3. We recognized as much when refusing to grant attorney fees in *Cady.* In that case, we concluded that the plaintiffs' failure to research an issue as instructed at pre-trial conference was insufficient, standing alone, to constitute bad faith, even though such research would have led to the discovery that

the plaintiffs had no valid claim. *Cady,* 671 P.2d at 151–52. We stated,

> Plaintiffs were clearly pursuing a meritless claim and better preparation might well have disclosed that to them. However, that conduct does not rise to lack of good faith. The evidence must also affirmatively establish a lack of at least one of the three elements of good faith heretofore discussed. There was no evidence that plaintiffs lacked an honest (although ill-formed) belief in their claim....

*Id.* at 152.

¶ 50 As previously noted, the district court found that the OPC lacked good faith because of (1) the lack of legal foundation based on existing case law, and (2) the lack of factual presentation regarding notice. We disagree that these two reasons are sufficient to constitute bad faith in this case. Admittedly, the wide variety of circumstances that could support a court's finding of subjective bad faith "requires that we give a [district] court relatively broad discretion in concluding that bad faith has been shown." *Valcarce v. Fitzgerald,* 961 P.2d 305, 316 (Utah 1998). But simply because the OPC was, according to the district court, incorrect in its interpretation of *Crandall* and *Schwenke* is inadequate to demonstrate bad faith. The record shows the OPC was consistent, and ultimately correct, in its assertions that *Crandall* neither prohibited the Bar from administratively suspending attorneys for failure to pay annual licensing fees, nor prevented the OPC from premising a disciplinary action upon the practice of law while administratively suspended. Furthermore, the OPC's failure to present any evidence that Sonnenreich had actual notice must be viewed in light of the OPC's continued adherence to the argument that no actual notice was required—a determination that, until this opinion, was debatable given the notice requirement in RLDD 8(b). We reject Sonnenreich's argument that these actions are sufficient to support a bad faith finding.[15]

---

15. We also reject the OPC's suggestion that by filing a complaint based on a screening panel's findings and recommendations, it necessarily acts in good faith. Admittedly, RLDD 11(a) requires the OPC to prepare and file a formal complaint "[i]n the event the screening panel finds probable cause to believe that there are grounds for public discipline and that a formal complaint is merited." This directive, however, is subordinate to rule 11 of the Utah Rules of Civil Procedure. *See* RLDD 17(a) ("Except as otherwise provided in these rules, the Utah Rules of

¶ 51 In addition to the two articulated reasons stated in its memorandum, the district court also implies that the OPC may have instituted the disciplinary action against Sonnenreich out of personal animus. Indeed, Sonnenreich maintains that such personal animus was the motivating factor behind the OPC's complaint. Generally, "this court [will uphold] the [district] court even if it failed to make findings on the record whenever it would be reasonable to assume that the court actually made such findings." *Valcarce*, 961 P.2d at 316 (citing *State v. Ramirez*, 817 P.2d 774, 788 n. 6 (Utah 1991)). In so stating, we explicitly rejected prior dicta implying that section 78–27–56 "requires the [district] court to make specific findings with regard to each element of the statute" in order to determine "whether the award of attorney fees was based on a meritless claim brought in bad faith or simply because the recovering party prevailed." *Id.* at 315 n. 1 (internal citations and quotations omitted). We explained that "[h]owever helpful such findings may be, the failure to enter them, alone, does not warrant reversal." *Id.*

¶ 52 Notwithstanding this general position, we cannot defer to the district court on the mere possibility that personal animus did, indeed, support its conclusion. The district court stated two specific bases for its conclusion that the OPC acted in bad faith; it is unclear whether personal animus also supported this determination. Therefore, while the district court's failure to enter a specific finding of personal animus alone does not warrant reversal, we cannot uphold its finding where "the ambiguity of the facts makes [an assumption of bad faith] unreasonable." *Ramirez*, 817 P.2d at 788. Because we cannot determine to what degree, if any, personal animus played in the district court's bad faith finding, we remand to the district court to consider the matter in accordance with this opinion.

¶ 53 Because we remand for a determination regarding bad faith, we need not address whether the district court erred in awarding unreasonable attorney fees.

## CONCLUSION

¶ 54 The Bar has the authority to administratively suspend attorneys for failing to pay the Bar's annual licensing fee by sending notice of the suspension to the attorney's address on record with the Bar. The Bar may also premise a disciplinary action on the unauthorized practice of law while administratively suspended, provided the attorney had actual notice of the suspension during the time in which he or she continued to practice law. In this case, it is undisputed that Sonnenreich received no actual notice of her administrative suspension. Therefore, we affirm the district court's grant of summary judgment. However, because the district court's findings regarding bad faith and personal animus were ambiguous, we remand to the district court on the issue of bad faith.

¶ 55 Justice PARRISH, Justice NEHRING, Judge BENCH, and Judge THORNE concur in Associate Chief Justice DURRANT'S opinion.

¶ 56 Having dismissed herself, Chief Justice DURHAM does not participate herein; Court of Appeals Judge RUSSELL W. BENCH sat.

¶ 57 Having dismissed himself, Justice WILKINS does not participate herein; Court of Appeals Judge WILLIAM A. THORNE, JR. sat.

---

Civil Procedure ... apply in formal discipline actions...."). Thus, the OPC is ultimately prohibited from presenting any pleading or paper to the court with knowledge, information, or a belief that such paper is being presented for an improper purpose, that the claims and other legal contentions are not warranted by existing law, or that the allegations and other factual contentions do not have evidentiary support. *See* Utah R. Civ. P. 11(b).